PRESRITE CORPORATION, Appellant,

v.

COMMERCIAL UNION INSURANCE COMPANY et al., Appellees.

[Cite as *Presrite Corp. v. Commercial Union Ins. Co.* (1996), 113 Ohio App.3d 38.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68704.

Decided July 25, 1996.

*Wegman, Hessler, Vanderburg & O'Toole, Keith A. Vanderburg* and *Christopher A. Holecek,* for appellant.

*Thompson, Hine & Flory, Christopher M. Bechhold, Jack F. Fuchs* and *Donald P. Screen; Calfee, Halter & Griswold* and *Walter A. Rogers,* for appellees.

---

KARPINSKI, Judge.

Presrite Corporation appeals from a judgment of the trial court finding that Presrite was not entitled to insurance coverage from Commercial Union Insurance Companies ("CUIC") for an intentional tort action brought against Presrite by one of its employees. Because the unambiguous language of the exclusion does not apply to the facts of this claim, we reverse the judgment of the court below.

This case arose when Quang Phan was injured while working at Presrite. Phan subsequently brought suit against Presrite alleging an intentional tort based on substantial certainty. Phan never argued that Presrite had directly intended to cause Phan's injury. CUIC, Presrite's insurer, agreed to provide a defense for Presrite, but reserved its right to disclaim coverage under the insurance policy. Presrite eventually settled with Phan and agreed to pay Phan $195,000 in exchange for a full release of Presrite.

After settlement, Presrite initiated the present action seeking a declaration that the CUIC insurance policy afforded Presrite the right to be indemnified for the money paid to Phan to settle the initial lawsuit. Both parties moved for summary judgment based on the language of the insurance policy. Holding that the policy did not provide indemnification for intentional torts, the trial court granted summary judgment for CUIC. Presrite appealed, raising four assignments of error. The first three assignments concern the trial court's granting of summary judgment for CUIC on the issue of insurance coverage and state as follows:

"I. The trial court's award of summary judgment in favor of CUIC was erroneous because CUIC's employers liability-stop gap endorsement policy provides coverage against compensatory damages sought by an employee in tort where the employer does not desire or intend to injure the employee but knew that injury was substantially certain to occur.

"II. The trial court erred as a matter of law in declaring that defendant-appellee's employers liability-stop gap insurance endorsement does not provide coverage for any type of intentional tort in the workplace.

"III. The trial court erred as a matter of law in denying plaintiff-appellant's motion for summary judgment."

In these assignments, Presrite argues that the policy expressly provides coverage for injuries suffered by employees in the workplace and that the exclusion found in the CUIC stopgap policy excludes only torts directly intended, not torts based on inferred intent. CUIC responds that the unambiguous language of the policy specifically excludes coverage for all intentional torts, whether directly intended or for which intent is inferred.

Provisions of a contract of insurance that are reasonably susceptible of more than one interpretation will be construed strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380. However, if a contract of insurance is clear and unambiguous, its interpretation is a question of law to be decided by the judge. *Olmstead v. Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 51 O.O.2d 285, 259 N.E.2d 123; *Leber v. Smith* (1994), 70 Ohio St.3d 548, 639 N.E.2d 1159.

Additionally, exclusions in an insurance policy must be clear and exact in order to be given effect. *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 543 N.E.2d 488.

The insurance policy at issue in this case is CUIC's Employers Liability Stop Gap Insurance Endorsement policy. The stopgap endorsement contained the following provisions:

"1. Insuring Agreement

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' to an employee of yours arising out of and in the course of his or her employment by you in a state indicated in the schedule. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS–COVERAGES A and B.

"2. Exclusions.

"This insurance does not apply to:

"a. 'Bodily injury' *caused intentionally by you* or at your direction." (Emphasis added.)

The landmark case, *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, established the cause of action for workplace intentional torts in Ohio. A workplace intentional tort requires proof that the employer either specifically desired to injure the employer or knew that injury was substantially certain to occur. *Jones v. VIP Dev. Co.* (1984), 15 OBR 246, 15 Ohio St.3d 90, 472 N.E.2d 1046. Later, in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the court clarified what must be demonstrated in order to establish "intent" for purposes of intentional torts in the workplace. In paragraph one of the syllabus the court stated as follows:

"Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1984], 36 Ohio St.3d

100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)"

The court has thus established that for intentional torts intent can be proved by establishing that the harm either was directly intended or was substantially certain to occur. *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 551 N.E.2d 962.

■ Presrite settled the intentional tort claim with the original plaintiff, Quang Phan. Presrite now seeks to have the CUIC insurance cover this settlement. CUIC questions, first, whether Ohio law permits intentional tort insurance. It had long been held that intentional tort insurance was against public policy. *Blankenship, supra,* 69 Ohio St.2d at 615, 23 O.O.3d at 508–509, 433 N.E.2d at 577–578; *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 31 OBR 180, 509 N.E.2d 74. The Supreme Court, however, departed from this position in *Harasyn, supra,* stating in the syllabus as follows:

"Public policy does not prohibit an employer from securing insurance against compensatory damages sought by an employee in tort where the employer's tortious act was one performed with the knowledge that injury was substantially certain to occur."

CUIC questions, however, whether *Harasyn* is still good law. In *Royal Paper Stock Co. v. Meridian Ins. Co.* (1994), 94 Ohio App.3d 327, 640 N.E.2d 886, the Franklin County Court of Appeals declined to follow *Harasyn.* The court noted that *Harasyn* was written at the same time that R.C. 4121.80 was enacted to create a state fund for intentional torts. The court in *Royal Paper* held that since R.C. 4121.80 was repealed in 1992,[1] the *Harasyn* decision is no longer valid and insurance coverage for intentional torts is contrary to public policy.

We do not share this disregard of *Harasyn.* The United States Court of Appeals for the Sixth District reviewed Ohio law in this area and found that Ohio public policy does not forbid employers from insuring against liabilities arising from those acts where the employer knew of a risk that injury to an employee was substantially certain to occur. *Lumbermens Mut. Cas. Co. v. S–W Industries, Inc.* (C.A.6, 1994), 39 F.3d 1324. The court in *Lumbermens* cited and expressly approved of *Harasyn.* Since the *Lumbermens* decision was issued almost two years after R.C. 4121.80 was repealed, it may be presumed that the court was aware of the change. Moreover, in making its decision, the court in *Harasyn* did not rely solely on R.C. 4121.80. *Harasyn* distinguished the different policy considerations in denying insurance for torts directly intended, on

---

1. R.C. 4121.80 was also found to be unconstitutional in *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722.

the one hand, and in allowing insurance, on the other, for those substantially certain to occur. The court stated as follows:

"The better view is to prohibit insurance only for those intentional torts where 'the fact of insurance coverage can be related in some substantial way to the commission of wrongful acts of that character. * * * In the case of a 'direct intent' tort, the presence of insurance would encourage those who deliberately harm another. In torts where intent is inferred from 'substantial certainty' of injury, the presence of insurance has less effect on the tortfeasor's actions because it was not the tortfeasor's purpose to cause the harm for which liability is imposed. * * * In the latter situation, the policy of assuring victim compensation should prevail."

The court in *Harasyn* then noted that the Ohio legislature had enacted R.C. 4121.80 to provide a state fund for intentional tort injuries. The fact that R.C. 4121.80 was repealed, however, does not affect the policy reasons stated in *Harasyn* for allowing intentional tort insurance. Because those reasons remain persuasive, we reaffirm that Ohio public policy does not prohibit insurance for "substantial certainty" intentional torts.

By interpreting the policy and giving each term its plain and ordinary meaning, we hold that the insurance policy does provide coverage to Presrite on this claim because the relevant exclusion does not apply. The exclusion provides that "this insurance does not apply" to bodily injury "caused intentionally by you or at your direction." Ohio law recognizes both "direct intent" and "substantial certainty" intentional torts. The plain language of this exclusion refers only to "direct intent" intentional torts. Nowhere in this exclusion is there any reference to intentional torts that are substantially certain to occur. In the cases CUIC cites in support, the language of the policies expressly excludes "substantially certainty" intentional torts. For example, in *Royal Paper*, the policy provided the following exclusion:

"5. Bodily injury intentionally caused or aggravated by you, or bodily injury resulting from an act which is determined to have been committed by you *with the belief that an injury is substantially certain to occur.*" (Emphasis added.) 94 Ohio App.3d at 328, 640 N.E.2d at 887.

In *Continental Ins. Co. v. United Foundries, Inc.* (Dec. 30, 1993), Stark App. No. CA 9342, unreported, 1993 WL 564227, the exclusion stated:

"f. 'Bodily injury' intentionally caused or aggravated by you, or 'bodily injury' resulting from an act which is determined to have been committed by you *with the belief that an injury is substantially certain to occur.*" (Emphasis added.)

In *Lt. Moses Willard, Inc. v. Am. States Ins. Co.* (Feb. 6, 1995), Clermont App. No. CA–06–049, unreported, 1995 WL 42388, the exclusion stated:

"e. 'Bodily injury' intentionally caused or aggravated by the insured, 'bodily injury' resulting from an act which is determined by a court to have been committed by the insured *with the belief that an injury is substantially certain to occur.*" (Emphasis added.)

These cases demonstrate an exclusion of "substantial certainty" intentional torts only when the insurance policy explicitly excludes this type.

Furthermore, in *Ward v. Custom Glass & Frame* (1995), 105 Ohio App.3d 131, 663 N.E.2d 734, this court upheld a judgment in which an insurance policy with wording similar to that in the case at bar was interpreted to provide coverage for this second type.[2] In *Ward,* the exclusion stated as follows:

"Exclusions—Such insurance as is afforded by this endorsement does not apply:

"(a) to bodily injury or death resulting therefrom caused intentionally by or at the direction of the insured."

As in the case at bar, this exclusion does not mention "substantial certainty" torts. Therefore, we hold that a policy exclusion of "bodily injury caused intentionally by you or at your direction" does not exclude coverage for an intentional tort arising from a risk of injury which the employer knew was substantially certain to occur.

In arguing for affirmance of the trial court, CUIC presents two additional points: (1) Presrite breached its duty to cooperate with CUIC by settling the lawsuit with Phan, and (2) Presrite failed to give timely notice of the Phan lawsuit to CUIC.[3] Neither argument has merit.

In arguing that Presrite breached its duty to cooperate, CUIC contends that the insured breached the insurance agreement when it settled with the plaintiff. Generally, the insured's failure to cooperate may be raised by the insurer as a defense to liability. *Gabor v. State Farm Mut. Auto Ins. Co.* (1990), 66 Ohio App.3d 141, 583 N.E.2d 1041. However, when the insurer denies coverage and the insured is exposed to the entire amount of a potential damage award, the insured does not breach its duty to cooperate because it settles the case.

**2.** In *New Hampshire Ins. Group v. Frost* (1995), 110 Ohio App.3d 514, 674 N.E.2d 1189, a different panel of this court found that an insurance policy did not provide coverage for "substantial certainty" torts and disavowed *Harasyn* because of the repeal of R.C. 4121.80. However, the insurance contract expressly stated that it included "neither expected nor intended" injuries. Because the contract provision was different from what the court is asked to interpret in the case at bar, *New Hampshire Ins. Group* does not control.

**3.** The trial court did not address these arguments when it granted summary judgment for CUIC. The court relied solely upon the argument that the policy did not provide coverage for this claim.

*McNicholes v. Subotnik* (C.A.8, 1993), 12 F.3d 105; cf. *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19. In the case at bar, CUIC provided a defense but denied coverage. Faced with the possibility of substantial liability at trial, Presrite did not violate any duty to CUIC by settling the Phan lawsuit.

 Finally, CUIC argues that Presrite did not give timely notice of the Phan lawsuit to CUIC. Generally, an insurance company may deny coverage when notice of the claim is given late.[4] *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 532 N.E.2d 730; *Am. Employers Ins. Co. v. Metro Regional Transit Auth.* (C.A.6, 1993), 12 F.3d 591. However, delay in giving notice will prevent coverage only when the delay prejudices the insurer in protecting its rights. *W. Am. Ins. Co. v. Hardin* (1989), 59 Ohio App.3d 71, 571 N.E.2d 449. In the instant case, CUIC has not demonstrated any prejudice resulting from any delay of notice. CUIC had the depositions of Phan as well as statements from all the relevant witnesses. CUIC was able to investigate the Phan lawsuit and participate in discovery, motions, and settlement. Accordingly, because CUIC has not demonstrated any prejudice, coverage cannot be denied for any lack of notice. Presrite's first three assignments of error are well taken.

"IV. The trial court erred as a matter of law in granting defendant-appellees' motion for summary judgment dismissing Presrite's claim that CUIC breached its covenant of good faith and fair dealing towards Presrite."

 In the last assignment, Presrite claims that CUIC breached its covenant of good faith and fair dealing toward Presrite. This claim was raised in Presrite's amended complaint filed August 16, 1994, but was not briefed in any of the responsive briefs filed in the court below. In its judgment entry, the trial court granted summary judgment for CUIC on the issue of CUIC's duty to indemnify. In its opinion the court did not specifically address Presrite's claim of bad faith; the court stated merely that all other claims were dismissed. At the time of the entry there were no pending motions to dismiss. We are left to interpret the trial court's decision as granting summary judgment for CUIC on Presrite's claim of bad faith. This apparent judgment is improper because neither party moved for summary judgment on this issue. We cannot cure this problem by independently examining what little evidence has been presented on this issue. The Supreme Court has held that an appellate court cannot review a grant of summary judgment if the trial court has failed to examine the issue

---

4. At the time of the injury (December 14, 1989), Ohio's intentional tort statute was still in effect. This statute would have covered the injury in the Phan lawsuit and no notice was necessary. However, after *Brady, supra,* declared this statute unconstitutional, it was then necessary for Presrite to notify CUIC of the pending Phan lawsuit. Presrite notified CUIC less than a month after *Brady.*

thoroughly. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138. The court in *Murphy* stated as follows:

"The court of appeals concluded that its independent consideration of the record could, in effect, cure the trial court's failure to examine the evidence. We cannot accept this conclusion. A reviewing court, even though it must conduct its own examination of the record, has a different focus than the trial court. If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court. The clear language of Civ.R. 56(C) prevents us from sanctioning the interpretation given by the court of appeals." *Id.* at 360, 604 N.E.2d at 141.

Therefore, we are unable to determine whether Presrite's fourth assignment of error has merit. Accordingly, the trial court, upon remand, shall fully resolve this claim.

The judgment is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

PORTER, P.J., and O'DONNELL, J., concur.