**LAKOTA et al., Appellees,**

v.

**WESTFIELD INSURANCE COMPANY, Appellant, et al.**

[Cite as *Lakota v. Westfield Ins. Co.* (1998), 132 Ohio App.3d 138.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72871.

Decided Dec. 22, 1998.

*Schulman, Schulman & Meros, John C. Meros* and *Lisa S. Friedman; Davis & Young, John R. Daly* and *Thomas W. Wright; Quandt, Giffels & Buck Co., L.P.A.,* and *Walter R. Matchinga,* for appellees.

*Weston, Hurd, Fallon, Paisley & Howley, William H. Baughman* and *Daniel A. Richards,* for appellant.

---

KARPINSKI, Judge.

This appeal arises from a declaratory judgment. The dispute concerns whether an insurance policy provides indemnification for tort claims by an employee who alleges that his injury was substantially certain to occur.

Plaintiff-appellee, Robert Lakota, was employed by Brunswick Welding, Inc. ("Brunswick") as an ironworker assembling structural steel on a school expansion project in Copley, Ohio. He was injured on December 1, 1993, when he fell from a partially completed roof that Brunswick allegedly overloaded with heavy construction materials. In violation of OSHA structural steel assembly standards, the joists were not bridged or welded.

Robert and his wife Laura Lakota filed an intentional tort claim against Brunswick in Common Pleas Court, case No. 267384. Their complaint alleged that Brunswick committed an intentional tort by requiring Robert to work on the project in this manner. It specifically alleged that injury was "substantially certain" to occur, but did not allege that Brunswick deliberately intended to injure him.

The Lakotas subsequently filed this declaratory judgment action in Common Pleas Court, case No. CV–319303, against defendant-appellant, Westfield Insurance Co. ("Westfield"), to determine the scope of indemnity coverage provided to Brunswick under a commercial general liability policy with an employer's liability endorsement. Westfield filed a counterclaim seeking a declaratory judgment

that the policy provided no duty to indemnify Brunswick on the intentional tort claim.

The tort and declaratory actions were consolidated by the trial court. The parties thereafter filed cross-motions for summary judgment on the insurance coverage issue. Granting the Lakotas' motion and denying Westfield's motion, the trial court thereby found the insurance policy covered the "substantial certainty" type of intentional tort claims. The trial court certified there was no just reason for delay of this appeal.

Westfield's sole assignment of error follows:

"The trial court committed reversible error by granting summary judgment to the Lakotas and denying summary judgment to Westfield Insurance Company as to the availability of indemnity insurance coverage under Westfield's employer's liability insurance policy because such coverage is excluded by the specific exclusion for 'substantially certain' intentional torts."

This assignment is well taken.

Westfield argues that the trial court improperly granted summary judgment for the Lakotas. They sought coverage for their substantial-certainty intentional tort claims under an insurance policy issued by Westfield. Westfield, on the other hand, argues that it was entitled to summary judgment in its favor, citing *State Auto Ins. Co. v. Golden* (1998), 125 Ohio App.3d 674, 709 N.E.2d 529, and *Estate of Izold v. Suburban Power Piping Corp.* (Mar. 20, 1997), Cuyahoga App. No. 70873, unreported, 1997 WL 127197. We agree and enter final judgment for Westfield.

It is undisputed that the commercial general liability ("CGL") policy issued to Brunswick in this case does not provide coverage for substantial-certainty intentional tort claims. Section I, paragraph A.1. of the CGL policy provides in pertinent part:

"Coverage A. Bodily Injury and Property Damage Liability

"1. Insuring Agreement.

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

Paragraph 2, which contains specific exclusions to coverage, provides:

"2. Exclusions.

"This insurance does not apply to:

"a. 'Bodily injury' or 'property damages' expected or intended from the standpoint of the insured. * * *

"* * *

"e. 'Bodily injury' to:

"(1) An employee of the insured arising out of and in the course of employment by the insured; or

"(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above."

The Lakotas seek to obtain coverage for their substantial-certainty intentional tort claims, however, by pointing to a separate employer's liability insurance policy ("ELI") issued to Brunswick by Westfield as part of the commercial insurance package. Although such employment-related claims may fall within the general scope of coverage under the ELI, they are subject to valid exclusions in the ELI. *Golden, supra; Estate of Izold, supra.*

Section B of the ELI provides certain general coverage provisions as follows:

"B. We Will Pay

"We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance."[1]

However, this coverage is expressly subject to the following exclusion in Section C of the ELI:

"C. Exclusions

"This insurance does not cover:

"* * *

"5. bodily injury intentionally caused or aggravated by you, or bodily injury resulting from an act which is determined to have been committed by you with the belief that an injury is substantially certain to occur."

 The Lakotas contend that this latter exclusion is ambiguous and, therefore, unenforceable. They argue that ELI coverage under Section B applies to bodily injury claims that arise out of or in the course of employment, but that coverage is thereafter excluded by Section C(5) for both direct intent and substantial-certainty employer intentional torts.

We enforced substantially identical exclusions in both *Golden* and *Estate of Izold* and likewise find nothing ambiguous about the exclusion in the case at bar.[2]

---

**1.** Employers Liability Policy in this case is hereafter referred to as "ELI" or "employer's liability policy."

**2.** The provision in *Golden* is identical to the one in the policy at bar except for a comma after the term "you" the first time it appears. *Id.* at 675–677, 709 N.E.2d at 530–531. The provision in *Estate of Izold* is likewise identical to the provision in the case at bar quoted above except that it had no definition of the term "you" and modified the term "determined" with the phrase "by a court." *Id.* at p. 10. The *Estate of Izold* exclusion provides in its entirety:

Insurance policies typically contain a broad coverage provision followed by exclusions to which the policy does not apply. This structure benefits policy holders because losses tend to fall within the broad grant under the coverage section and cannot thereafter be denied unless governed by a specific, clear exclusion. The Lakotas' argument, taken to its logical extension, would invalidate this established practice. Neither the general structure of the policy nor any of the specific terms supports their argument that the challenged provisions are ambiguous in this case.

█ The Lakotas also contend that if the terms of the ELI are enforced as written, so that employer substantial-certainty intentional torts are not covered, then the coverage provided to Brunswick under the ELI would be illusory. They contend that upholding the substantial-certainty exclusion would result in the ELI, for which Brunswick paid $250, providing no additional coverage whatsoever beyond that already provided by the CGL policy. They conclude, therefore, it should be construed to provide some coverage.

The Employers Liability Insurance policy in the case at bar provides, in part, as follows:

"B. We Will Pay

"We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

"The damages we will pay, where recovery is permitted by law, include damages:

"1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

"2. for care and loss of services; and

"3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

---

"2. Exclusions. The following exclusion is added: * * * g. to 'bodily injury' intentionally caused or aggravated by the named insured, any executive officer, director, stockholder, or partner, or 'bodily injury' resulting from an act which is determined by a court to have been committed by the named insured, any executive officer, director or stockholder or partner with the belief that an injury is substantially certain to occur."

"Provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

"4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer."

This provision is substantially identical to the provisions in *Golden* and *Estate of Izold, supra.*[3]

Although the Lakotas argue generally that this ELI provides no coverage whatsoever, their specific argument in their brief on appeal literally belies the contention by referring to these four specific types of additional coverage as *"virtually* worthless."[4] We rejected this precise argument in both *Golden, supra* at 678, 709 N.E.2d at 532, and *Estate of Izold, supra,* at 12–13, which contained substantially identical coverage provisions. *Golden* stated as follows:

"The endorsement does allow coverage to the employer if the manufacturer of the product that injures an employee sues the employer for altering the product, see Section (B) of the Endorsement; see *Royal Paper [Stock v. Meridian Ins. Co.* (1994), 94 Ohio App.3d 327, 640 N.E.2d 886], *supra,* 94 Ohio App.3d at 334 [640 N.E.2d 886 at 891] (Tyack, J., concurring). Coverage is provided when relatives of an employee sue for the relatives' damages resulting from an injury to the employee. *Id.* When some benefit to the insured is evident from the face of the endorsement, the endorsement is not an illusory contract. *Id.; Izold, supra." Id.* at 678, 709 N.E.2d at 532.

Although the Lakotas argue that this coverage is virtually worthless, some benefit to the insured is evident from the face of the endorsement. Therefore, the endorsement is not an illusory contract.[5]

▆▆▆ Finally, the Lakotas argue, in passing, that Westfield was not entitled to summary judgment in its favor because Brunswick, through its owner John Daly, intended to obtain insurance coverage for employer intentional torts.[6]

---

**3.** The differences among the policies appear to be limited to cosmetic differences. The provision in *Golden* is identical to the policy at bar except for the word "consequences" instead of "consequence" in the third paragraph. *Id.* at 677–678, 709 N.E.2d at 531–532. The provision in *Estate of Izold* is identical to the policy at bar except for the word "you" instead of "your" in the fourth paragraph. *Id.* at pp. 5–6.

**4.** Their motion for summary judgment in the trial court made a similar claim that "there is essentially no coverage of any value" provided by the ELI.

**5.** It should not be a surprise that the benefit might be modest in light of the fact that the total annual cost of the coverage was only $250.

**6.** Their motion for summary judgment did not make this argument. In a reply brief they cited equivocal testimony from Daly, in response to their leading question, that he desired to buy as

144

Even if true, however, the Lakotas have not offered any authority to explain how the insured's subjective intent would expand coverage beyond the literal terms of the policy. The arguments typically resorted to when attempting to override the literal terms of an insurance contract are the doctrines of waiver and estoppel. As a general matter, it is well established, however, that waiver and estoppel cannot expand coverage beyond the express terms of an insurance policy. *E.g., Hartory v. State Auto. Mut. Ins. Co.* (1988), 50 Ohio App.3d 1, 3, 552 N.E.2d 223, 225–226. In any event, the record in this case shows no genuine issue of material fact concerning either of these doctrines to prevent enforcement of the express policy terms.

The record in this case shows no waiver of the substantial-certainty intentional tort exclusion by Westfield's voluntary relinquishment of a known legal right. Moreover, there is no evidence that anyone told Daly that the ELI indemnified Brunswick for substantial-certainty intentional torts. No estoppel to assert this exclusion exists, because Daly presented no evidence to support the element of reliance. The record contains no evidence that Westfield or any other insurer offered intentional tort coverage without this exclusion at the time he obtained the ELI or that Daly was prevented from procuring such coverage from another source.

Accordingly, Westfield's sole assignment of error is well taken.

Judgment reversed and final judgment entered for Westfield.

*Judgment accordingly.*

NAHRA, P.J., and TIMOTHY E. MCMONAGLE, J., concur.

---

much insurance as the law permitted. The Lakotas ignore, however, Daly's testimony that he desired to buy a litigation defense to such claims and that the amount of insurance he would have bought, even if complete indemnity coverage were available, depended upon the cost.