MOORE,

v.

**CARDINAL PACKAGING, INC., Appellee, et al.;**
**Buckeye Union Insurance Co., Appellant.**

[Cite as *Moore v. Cardinal Packaging, Inc.* (2000), 136 Ohio App.3d 101.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75232.

Decided Jan. 31, 2000.

*Dean Nieding,* for Floyd Noah Moore II.

*Benesch, Friedlander, Coplan & Aronoff, L.L.P., David W. Mellott* and *Ryan P. McBride*; *Gallagher, Sharp, Fulton & Norman* and *James F. Sweeney,* for appellee Cardinal Packaging, Inc.

*Quandt, Giffels & Buck, Joseph R. Tira* and *Edward J. Stoll, Jr.,* for appellant Buckeye Union Insurance Company.

*Betty D. Montgomery,* Attorney General, and *Marcia J. Macon,* Assistant Attorney General, for Bureau of Workers' Compensation.

*William Vance,* for Ohio Materials Handling, Inc.

---

JAMES D. SWEENEY, Judge.

Third-party defendant-appellant Buckeye Union Insurance Company ("Buckeye") appeals from the denial of its motion for summary judgment and the granting of defendant-appellee Cardinal Packaging, Inc.'s ("Cardinal") motion for summary judgment with regard to the issue of insurance coverage. For the reasons adduced below, we reverse and enter judgment in favor of Buckeye.

A review of the record on appeal indicates that on July 28, 1994, plaintiff Floyd N. Moore II was injured in the course of his duties at his employer, Cardinal, while unloading a truck when the forklift he was operating tipped over and crushed one of his legs. The leg was subsequently surgically amputated. Moore filed his complaint on July 26, 1996, alleging: (1) a cause of action for a

"substantial certainty"-type intentional tort against his employer, Cardinal [1]; and, (2) a cause of action for products liability and/or negligence against the remaining named defendants.[2]

Cardinal requested a defense and indemnification by Buckeye pursuant to a policy of commercial general liability insurance ("CGL") issued by Buckeye to Cardinal. Buckeye agreed to provide a defense to Cardinal, but maintained that there was no coverage for the claim of intentional tort by an employer and that no indemnification would be provided pursuant to the policy.

On September 20, 1996, Cardinal filed its third–party complaint against its insurer, Buckeye seeking a determination of the rights and responsibilities under the Buckeye policy of insurance. Buckeye filed its answer to the third–party complaint on November 22, 1996.

Thereafter, Cardinal and Buckeye filed cross-motions for summary judgment as to the issue of insurance coverage as contained in the first and second claims contained in the third–party complaint.

On August 19, 1998, the trial court issued its ruling on the motions for summary judgment relevant to this appeal utilizing a half-sheet status form entry containing conclusory statements with no legal reasoning. On September 1, 1998, the trial court issued a two-paragraph order, again using conclusory statements without legal reasoning, which expressly found: (1) that Cardinal is entitled to defense and indemnification from Buckeye pursuant to the policy of insurance, (2) that Buckeye's denial of coverage for Moore's claim constitutes a breach of the policy, and, (3) no just reason for delay.

1. See Complaint at the Fourth Cause of Action, wherein it is alleged:

"25. At all times pertinent hereto, defendant Cardinal Packaging, Inc., by and through its managers and supervisory personnel, knew that the truck which plaintiff was instructed to unload was parked dangerously close to an embankment, and that The Forklift which plaintiff was instructed to use had limited maneuverability and inadequate braking action to operate on or near the grade of the embankment.

"26. Defendant Cardinal Packaging, Inc., by and through its managers and supervisory personnel, knew of the danger of a lateral overturn as a result of operating The Forklift in the confined space next to the embankment, and further knew that if employees were subject to such dangerous procedure of unloading the truck from that location that harm to the employee would be *substantially certain*.

"27. Despite the knowledge of Cardinal Packaging, Inc., by and through its managers and supervisory personnel, of the dangerous procedure and condition of The Forklift as hereinbefore alleged, they did act to require the plaintiff * * * to perform the dangerous task of utilizing The Forklift in the confined space immediately adjacent to the embankment to unload the truck." (Emphasis added.)

2. The remaining defendants included: (1) the manufacturer of the forklift (Allis–Chalmers Corp.) and its product liability trust, (2) the rebuilder/overhauler of the forklift (Ohio Materials Handling, Inc.), (3) the maintenance company for the forklift (Service & Parts Exchange, Inc.), (4) the lessor of the forklift (The Bode–Finn Co. dba Rem Lifts).

On September 17, 1998, Buckeye filed its notice of appeal from the order of September 1, 1998.

Buckeye's lone assignment of error provides:

"The trial court erred in finding that the Buckeye policy provides coverage for the employment intentional tort alleged by Floyd Moore against Cardinal."

The relevant language of the CGL includes the following:

"Section I—Coverages

"Coverage A.   Bodily Injury and Property Damage Liability.

"1.   Insuring Agreement.

"a.   *We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.   We will have the right and duty to defend any 'suit' seeking those damages.   \* \* \*.*

"No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

"b.   This insurance applies to 'bodily injury' and 'property damage' only if:

"(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

"(2) The 'bodily injury' or 'property damage' occurs during the policy period. " \* \* \* \*

"2.   *Exclusions.*

"*This insurance does not apply to:*

"a.   *'Bodily injury'* or 'property damage' *expected or intended from the standpoint of the insured.*   This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property. " \* \* \* \*

"d.   Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

"e.   'Bodily injury' to:

"(1) An employee of the insured arising out of and in the course of employment by the insured;  or

"(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

"This exclusion applies:

"(1) Whether the insured may be liable as an employer or in any other capacity; and

"(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

" * * *

"Section V—Definitions

" * * *

"9. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Emphasis added.)

■   The Special Employers Liability Coverage ("SELC") contained under the Stop–Gap endorsement attached to the CGL, includes, among other provisions, a specific coverage exclusion:

"Section I—Coverage

"Special Employers Liability

" * * *

"2.  *Exclusions.*

" * * *

"f.  *'Bodily injury' intentionally caused or aggravated by you, or 'bodily injury' resulting from an act which is determined to have been committed by you with the belief that an injury is substantially certain to occur.*

" * * *

"Section V—Definitions

" * * *

"3. 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time:

"a.   A disease is not bodily injury by accident unless it results directly from bodily injury by accident;  and

"b.   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

"4.  'Coverage incident' means 'bodily injury' by accident or by disease *to any of your employees which:*

"a.   *Arises out of and in the course of the injured employee's employment by you;* and

"b.   Occurs in the 'coverage territory'.

"  *  *  *

"6. *'Damages' include* those:

"a. For which you are liable to a third party by reason of a claim or 'suit' against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

"b. For care and loss of services; and

"c. For consequential 'bodily injury' to a spouse, child, parent, brother or sister of the injured employee; *provided that these damages are the direct consequence of 'bodily injury' that arises out of and in the course of the injured employee's employment by you; and*

"d. *Because of 'bodily injury' to your employee that arises out of and in the course of employment claimed against you in a capacity other than as employer.*

"*This insurance applies to damages set forth in a. through d., above only:*

"a. *If arising out of a 'covered incident'; and*

"b. Where permitted by law." (Emphasis added.)

Upon reading the SELC, it is crystal clear that employer intentional torts, whether direct-intent type or substantial-certainty type, are specifically excluded from coverage by the terms of the policy. In addition, we note that similarly worded intentional tort exclusionary language contained within other insurance policies has been determined to be clear and unambiguous by this court. See *State Auto Ins. Co. v. Golden* (1998), 125 Ohio App.3d 674, 709 N.E.2d 529; *Lakota v. Westfield Ins. Co.* (1998), 132 Ohio App.3d 138, 724 N.E.2d 815; *Izold v. Suburban Power Piping Corp.* (Mar. 20, 1997), Cuyahoga App. No. 70873, unreported, 1997 WL 127197; also see, *Presrite Corp. v. Commercial Union Ins. Co.* (1996), 113 Ohio App.3d 38, 680 N.E.2d 216 (an exclusion of "substantial certainty" intentional torts from coverage is effective only where the policy explicitly excludes this type). We similarly conclude that the policy exclusion *sub judice* is clear and unambiguous.

To defeat this unambiguous preclusion of coverage, it was advanced before the trial court by Cardinal that: (1) the enforcement of the preclusion of coverage would render the SELC endorsement illusory in violation of public policy, and (2) the parol evidence represented by the deposition testimony of the insurance agent, Mr. Ball, who renewed the policy at the behest of Cardinal, should be permitted to alter the written terms of the policy to provide coverage for employer intentional torts. Inexplicably, the trial court apparently found one, or both, of these subarguments to be persuasive and entered judgment against the insurer. Both of these arguments are without merit.

■ As to the first subargument, it is noted that the CGL excludes coverage for product liability claims brought against the insured by its employees under the dual capacity doctrine, and consortium claims by relatives of those employees who are themselves injured during the scope of their employment. The SELC removes this exclusion for such claims and damages and permits indemnification for same. As this court stated in *State Auto Ins. Co. v. Golden, supra,* at 678, 709 N.E.2d 529, citing *Royal Paper Stock v. Meridian Ins. Co.* (1994), 94 Ohio App.3d 327, 334, 640 N.E.2d 886, and *Izold v. Suburban Power Piping Corp., supra:*

"When some benefit to the insured is evident from the face of the endorsement, the endorsement is not an illusory contract."

Based on *Golden,* the SELC *sub judice* is not illusory.

■ As to the second subargument regarding the use of parol evidence to alter the clear and unambiguous terms of a written contract, it is fundamental that parol evidence cannot be used in such a manner. This doctrine is explained by Judge Abele in *Medley v. Portsmouth* (Dec. 23, 1996), Scioto App. No. 96 CA 2426, unreported, 1996 WL 737587, at 6:

"Ohio courts have consistently held that when a contract is clear and unambiguous, the intent of the parties must be determined from the contract itself. In *Trader v. People Working Cooperatively, Inc.* (1994), 104 Ohio App.3d 690, 694, 663 N.E.2d 335, 337, the court summarized Ohio law barring parol evidence in pertinent part as follows:

" 'When a court construes a contract, its overriding goal is to give effect to the intent of the parties. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132 [31 OBR 289, 291], 509 N.E.2d 411, 413. When the terms of a written contract are clear, the court presumes that the parties' intent resides in the words of the agreement. *Id.; Alexander v. Buckeye Pipeline Co.* (1978), 53 Ohio St.2d 241, 246 [7 O.O.3d 403, 406], 374 N.E.2d 146, 150; *Inland Refuse Transfer Co. v. Browning–Ferris Industries* (1984), 15 Ohio St.3d 321, 323 [15 OBR 448, 449–450], 474 N.E.2d 271, 273; *Stony's Trucking Co. v. Pub. Util. Comm.* (1972), 32 Ohio St.2d 139, 142 [61 O.O.2d 388, 389–390], 290 N.E.2d 565, 568. In such a case, the parol evidence rule prevents parties from introducing evidence of prior or contemporaneous negotiations that would alter the terms of the written document. *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 273, 549 N.E.2d 1210, 1217.' See, also, *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686. Courts may not admit parol evidence to vary, alter, or modify the terms of a clear and unambiguous written agreement. *Trader; Kelly; Uebelacker.*"

Based on the foregoing, we necessarily affirm the assignment of error, reverse the ruling of the trial court, and enter judgment in favor of Buckeye Union Insurance Company.

This cause is reversed and judgment entered in favor of Buckeye Union Insurance Co.

It is, therefore, considered that the appellant recovers of the appellees its costs herein.

It is ordered that a special mandate be sent to the trial court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

*Judgment reversed*
*and cause remanded.*

PATTON, P.J., and PORTER, J., concur.