[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
In a single assignment of error, plaintiff-appellant W.G. Fairfield Company ("Fairfield") challenges the trial court's entry of summary judgment in favor of defendant-appellee Cincinnati Insurance Company ("CIC"), pursuant to which it declared that CIC did not have a duty to defend Fairfield in a lawsuit filed by the estate of one of Fairfield's employees. For the following reasons, we affirm.
An appellate court reviews the grant of summary judgment de novo.[1]
Summary judgment shall only be granted when there remains no genuine issue as to any material fact and when, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.[2]
On September 1, 1999, the estate of Floyd T. Wolfe filed a compliant against Fairfield alleging an employer intentional tort ("the Wolfe complaint"). Wolfe, an employee of Fairfield, was fatally injured in an automobile-pedestrian accident while working on Interstate Highway 71 installing fiber optic cable. Wolfe had crossed the median and had entered the left lane where he was struck by an automobile. The Wolfe complaint alleged that, in light of the fact that Fairfield had no flag personnel or other appropriate traffic controls in place the day that Wolfe was injured, Fairfield knew that its workplace practices and procedures were dangerous. Further, the Wolfe complaint alleged that Fairfield knew with substantial certainty that the dangerous workplace conditions would result in injury to its employees, but that Fairfield nonetheless expected its employees to continue to work under those circumstances.
At the time of Wolfe's accident, Fairfield was the name insured under a policy of commercial general liability coverage issued by CIC. An Ohio Liability Coverage Enhancement, also known as "Stop Gap" coverage, modified the general liability policy.
The commercial general liability policy, which covered bodily injury and property damage, provided in relevant part that "[CIC] will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend any `suit' seeking those damages." The policy specifically excluded coverage for bodily injury to an employee arising out of "employment by the insured" or "performing duties related to the conduct of the insured's business."
The Stop Gap policy modified that coverage by providing that CIC would insure injuries sustained by Fairfield employees that arose out of the course of their employment. But the policy specifically excluded from this coverage "`bodily injury' expected or intended from the standpoint of the insured." This exclusion included "(2) any liability for acts committed by or at the direction of an insured in which the act is substantially certain to cause `bodily injury.' For purposes of this insurance, an act is substantially certain to cause `bodily injury' when all three of the following conditions are met: (a) an insured knows of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (b) an insured knows that if an employee is subject by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be substantially certain; and (c) an insured under such circumstances and with such knowledge, does act to require the employee to continue to perform the dangerous task."
Fairfield essentially asserts that the allegations in the Wolfe complaint did not state a claim for an employer intentional tort, and that the exclusion in the Stop Gap policy was, therefore, not operative. Accordingly, Fairfield argues that it was entitled to coverage under the commercial general liability policy, as modified by the Stop Gap policy, and that CIC had a duty to defend it in the Wolfe action. We disagree.
An insurer's duty to defend is triggered when the allegations in the underlying complaint state a claim that is potentially or arguably within the policy coverage.[3] If it is determined that there is no possibility of coverage under the policy as related to the allegations in the compliant, the insurer's duty is extinguished.[4] Likewise, an insurer has no duty to defend when the allegations in a complaint raise claims that are specifically excluded under the policies of insurance.[5]
This is true regardless of whether the allegations that give rise to the excluded claims are groundless, false or fraudulent.[6] An insurance company has no obligation to its insured unless the conduct at issue falls within the scope of coverage.[7]
Here, the Wolfe complaint alleged an employer intentional tort. Specifically, it alleged that Wolfe's injuries were substantially certain to occur when Fairfield knew that it had no traffic-control devices in place while Wolfe was working to install the fiber optic cable along the side of an interstate highway. An exclusion of employer intentional torts from insurance coverage is effective when the exclusionary language is clear and unambiguous.[8] A review of the Stop Gap policy purchased by Fairfield reveals that Fairfield did have coverage for bodily injuries to employees that arose during the course of employment. But injuries to employees that were substantially certain to occur due to the intentional act of an insured, such as requiring Wolfe to work despite the lack of traffic-control devices, were not covered. Because the employer-intentional-tort claim in the Wolfe complaint was clearly and unambiguously excluded from coverage under Fairfield's Stop Gap policy, we hold that CIC did not have a duty to defend Fairfield and thus affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt, P.J., Gorman and Winkler, JJ.
[1] Drusco v. Bank One of Columbus (1997), 124 Ohio App.3d 125,130-131, 705 N.E.2d 717.
[2] Civ.R. 56(C).
[3] Westfield Ins. Co. v. Jarrett Reclamation Serv., Inc. (1996),114 Ohio App.3d 492, 499, 683 N.E.2d 415; Willoughby Hills v. CincinnatiIns. Co. (1984), 9 Ohio St.3d 177, 180, 459 N.E.2d 455.
[4] Wedge Products, Inc. v. Hartford Equity Sales Co. (1987),31 Ohio St.3d 65, 67-68, 509 N.E.2d 74.
[5] W. Lyman Case Co. v. Nat'l City Corp., 76 Ohio St.3d 345,349, 1996-Ohio-392, 667 N.E.2d 978, citing Zanco, Inc. v. Michigan Mut.Ins. Co. (1984), 11 Ohio St.3d 114, 464 N.E.2d 513.
[6] See Sanderson v. Ohio Edison Co., 69 Ohio St.3d 582,1994-Ohio-379, 635 N.E.2d 19.
[7] Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 36,1996-Ohio-113, 665 N.E.2d 1115.
[8] Moore v. Cardinal Packaging, Inc. (2000), 136 Ohio App.3d 101,106, 735 N.E.2d 990.