DECISION. *Page 2 
{¶ 1} This dispute turns on the meaning of "regular use" as it appears in an exclusion in a policy's uninsured/underinsured motorist ("UM/UIM") coverage.
 {¶ 2} While driving his employer's van, plaintiff-appellee James Coleman and his wife, Vicky, were injured in an accident with another car that was uninsured. Coleman claimed coverage under the family endorsement of Vicky's insurance policy with defendant-appellant Progressive Preferred Insurance Company. But the UM/UIM endorsement excluded losses for injuries that occurred while operating a vehicle that was "owned by, furnished to, or available for the regular use of, you or a relative." Contending that the exclusion applied, Progressive denied coverage. Coleman sued and won; the trial court held that the regular-use exclusion did not apply. We reverse.
 I. An Accident and a Misplaced Comma {¶ 3} The facts are undisputed. Coleman was a full-time driver for Integrated Services Inc., a van-service provider. Using Integrated's van, Coleman drove customers to and from the doctor. Though Integrated assigned Coleman to the same van every workday, he was not permitted to keep its keys, nor was he responsible for the van's maintenance. He would pick up the keys in the morning and return them in the evening. Only when Coleman was on call, which was about once or twice a week, did Integrated allow him to take the van home. Integrated had never permitted Coleman to use the van for personal reasons.
 {¶ 4} On the day of the accident, Coleman was on call, but he was not on a work-related run. Instead, he had used the van to visit family, thereby violating Integrated's rules. The crash happened on his way home from the visit. *Page 3 
 {¶ 5} The policy stated, "Coverage is not provided for bodily injury or property damage sustained by any person while operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of, you or a relative, other than a covered vehicle."
 {¶ 6} Whether the exclusion applied was the sole issue at trial; and its resolution turned on one question: was the van furnished for Coleman's "regular use"?
 {¶ 7} We first pause to note that both parties posit that the phrase "furnished to" should be read in tandem with the phrase "for the regular use of." As read together, the parties assert, the exclusion would apply to vehicles furnished for the regular use of the insured or a relative. But in fact the exclusion denies coverage when a car is merely "furnished to" the insured or a relative, notwithstanding "regular use" — even if it has been furnished only once. Grammatically, the correct interpretation of the policy is that coverage is excluded if the insured is operating or occupying a motor vehicle (1) owned by, (2)furnished to, or (3) available for the regular use of, a named insured or relative, that is not a covered vehicle under the policy.[1]
 {¶ 8} The serial comma between "furnished to" and "available for the regular use of" requires that each phrase in the series independently modify "a named insured or relative." Moreover, the comma after the closing phrase of the triumvirate bolsters the conclusion that the modifying phrases are "owned by," "furnished to," or "available for the regular use of," but not "furnished for the regular use of." The addition of the serial comma requires this interpretation — whatever the drafters thought they were doing. The policy operates to exclude from coverage a vehicle that has been "furnished to" the insured or a relative if that vehicle is not a covered vehicle. *Page 4 
 {¶ 9} We think this wording odd because excluding coverage under the "furnished to" section operates to eliminate the analysis whether the vehicle's use was "regular"; that is, even if the use had not been regular, coverage is excluded if the vehicle had been "furnished to" an insured or relative if the vehicle was not a "covered vehicle" as defined by the policy. So whatever additional coverage the incidental-use section added in theory, it, in the same section, excluded in fact.
 {¶ 10} Progressive asserts that its provision mirrors the language of R.C. 3937.18(I)(1), but there is one subtle difference: the statute has no comma after "available for the regular use of." R.C. 3937.18 permits exclusions to UM/UIM coverage when "the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy * * * ."
 {¶ 11} Arguably, the legislature was setting out the different categories that could be legally excluded, and not specifying the exact language. But its comma placement (or misplacement) has seemingly allowed the "furnished to" to eclipse the other exclusions. That would mean that any vehicle, anytime, that is "furnished to" anyone, for "regular use" or not, would not be covered.
 {¶ 12} Of course, the coverage is then illusory. Surely, it was not the legislature's intent to specifically allow useless coverage.
 II. Illusory Coverage {¶ 13} An insurance provision is illusory when it appears to grant a benefit to the insured, though in reality it does not.[2] In this case, the policy purported to provide incidental-use coverage, but as noted above, the "furnished to" language seems to exclude *Page 5 
all such coverage. It is unlikely that this is what the parties intended. Certainly Vicky Coleman did not intend to pay Progressive a premium for nothing in return.
 {¶ 14} But the legislature has expressly permitted illusory coverage. Probably it was simply a drafting error: it meant to have two categories, but mistakenly added a comma, thus making a three-part series of modifiers and changing the meaning — and Progressive followed the error. Further, if the second and third qualifiers of the triumvirate — "furnished to" and "available for" — modify "the regular use of a named insured," then the first qualifier "owned by" must likewise modify "the regular use of a named insured." Owned by the regular use of a named insured? Surely that is not what was meant.
 {¶ 15} We could follow the statute as written, which would be to allow illusory coverage. But surely, this was not intended. So we follow another maxim: that we should interpret statutes to prevent an absurd result.[3] We could also hold that the language is ambiguous — the parties themselves interpret it to mean other than what it says — or we could hold that the language is unfathomable. Either way, we would interpret the language against the drafter and in favor of coverage — to mean what the parties treated it as meaning. But no interpretation is availing for Coleman.
 {¶ 16} Thus we analyze this case by interpreting R.C. 3937.18(I)(1) to read as it was obviously meant to read: "(1) owned by, or (2) furnished or available for the regular use of." The parties, and other courts, have assumed this meaning, evidently without noticing the patent absurdity of the original language. And under this interpretation, calling for a regular-use analysis, we hold that Coleman's use was regular. *Page 6 
 III. Assignments of Error {¶ 17} Progressive assigns two errors: (1) the trial court erred in denying Progressive's summary-judgment motion, and (2) the trial court's judgment was against the weight and sufficiency of the evidence.
 {¶ 18} We summarily overrule Progressive's first assignment of error. Generally, when a trial court denies summary judgment, any error is rendered harmless by a trial on that issue.[4] That is the situation here. The trial court determined that an issue existed on whether the van was available for Coleman's regular use. This had been the one and only issue addressed at trial. Any error at the summary-judgment stage was cured by the trial or will be cured by our review of the trial.
 IV. Manifest Weight of the Evidence {¶ 19} Judgments supported by competent, credible evidence going to all the essential elements of the case will not be overturned as being against the manifest weight of the evidence.[5]
 {¶ 20} Insurance disputes over the application of regular-use exclusions are not new to Ohio courts, and in this regard the Ohio Supreme Court has provided some guidance. It has held that regular-use exceptions are unambiguous, [6] which means that the plain meaning of the words may be relied on.[7] And though regular use is a concept that escapes a precise definition, the court has provided some of its contours. In Kenney v. Emp. Liability Assur. Corp., [8] it held that the assignment of a police cruiser to an *Page 7 
officer on 122 out of 164 days fell within the exclusion. Conversely, the court found that the exclusion did not apply when a vehicle was used less than ten times per year.[9]
 {¶ 21} Progressive argues that a straightforward application ofKenney compels a finding of regular use in this case. To support its argument, Progressive cites two appellate districts that have appliedKenney. The Eighth Appellate District upheld a finding that a mail truck was furnished for the regular use of a postal worker since he used the truck every workday.[10] And the Ninth Appellate District upheld a finding that a garbage truck was furnished for the regular use of a trash collector.[11]
 {¶ 22} Coleman counters by suggesting that the Ohio Supreme Court inThompson v. Preferred Risk Mut. Ins. Co.[12] modified its holding inKenney. In Thompson, the vehicle in question belonged to Thompson's live-in girlfriend. Thompson was only occasionally permitted to use the car, and he needed to ask for permission first. The court held that the lack of his control over the car factored against a finding of regular use.[13] Coleman argues that the court retreated from Kenney and redefined "regular use." He argues that it made control the touchstone for regular-use determinations. But we are convinced that theThompson court neither modified nor overruled Kenney. The circumstances in Kenney and Thompson are too distinct to conclude thatThompson marks a change of direction in Ohio.
 {¶ 23} The factual similarity between this case and Kenney is inescapable. In both cases, the accidents occurred in vehicles furnished for the daily use of an employee. Coleman used the van almost every day, and he occasionally kept the van overnight. The only significant difference is that Coleman's accident occurred when he *Page 8 
was off-duty. But, in this context, the case law makes no distinction between whether the vehicle was furnished for work or personal use. Distinguishing between the two types of uses would require looking beyond the plain meaning of the exclusion.
 {¶ 24} Under the undisputed facts of this case, the van was available for Coleman's regular use. Thus, as a matter of law, Progressive was not obligated to provide coverage. Accordingly, we reverse the judgment of the trial court and remand the case for entry of judgment for Progressive.
Judgment reversed and cause remanded.
SUNDERMANN, P.J., and DINKELACKER, J., concur.
[1] Emphasis added.
[2] See Lakota v. Westfield Ins. Co. (1998), 132 Ohio App.3d 138,724 N.E.2d 815.
[3] State ex rel. Haines v. Rhodes (1958), 168 Ohio St. 165,151 N.E.2d 716, paragraph two of the syllabus.
[4] Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150,642 N.E.2d 615.
[5] Cincinnati ex rel. Cosgrove v. Grogan (2001), 141 Ohio App.3d 733,749, 753 N.E.2d 256, citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, paragraph one of the syllabus.
[6] Kenney v. Emp. Liability Assur. Corp. (1966), 5 Ohio St.2d 131,214 N.E.2d 219.
[7] Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256.
[8] Kenney, supra.
[9] Sanderson v. Ohio Edison Co., 69 Ohio St.3d 582, 1994-Ohio-379,635 N.E.2d 19.
[10] Pickering v. Nationwide Mut. Ins. Co., 8th Dist. No. 82512, 2003-Ohio-4076.
[11] McCall v. State Farm Mut. Auto. Ins. Co., 9th
Dist. No. 23601, 2007-Ohio-5109.
[12] (1987), 32 Ohio St.3d 340, 513 N.E.2d 733.
[13] Id. at 342-343. *Page 1