**Peggy Ann McNICHOLES, Appellee,**

v.

**Leo SUBOTNIK, Appellee,**

v.

**ST. PAUL FIRE & MARINE INSURANCE CO.,**
**Appellant.**

No. 92–2392.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 19, 1993.

Decided Dec. 8, 1993.

Timothy P. Tobin, Minnetonka, MN, for appellant.

John L. Weyland, Wayzata, MN, for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.

St. Paul Fire & Marine Insurance Co. ("St. Paul") appeals the District Court's [1] grant of summary judgment in favor of Peggy Ann McNicholes.[2] For the reasons stated below, we affirm the judgment of the District Court.

McNicholes entered psychotherapy with psychologist Leo Subotnik in the fall of 1984. She sought treatment because she recently had been raped and was also a victim of childhood incest. During the course of McNicholes's treatment, Subotnik and McNicholes became involved in a sexual relationship, which, according to the undisputed evidence in this case, resulted from Subotnik's mishandling of the transference-countertransference phenomenon.[3]

McNicholes filed an action against Subotnik in the District Court claiming severe psychological injuries resulting from her sexual relationship with him. Subotnik called upon his professional liability carrier, St.

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. Appellee formerly was known as Peggy Ann Vetter. The Court was advised of the change of her surname to McNicholes during the pendency of this appeal.

3. Transference is a common result of psychotherapy. The term refers to the patient's "projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past." *Stedman's Medical Dictionary* 1622 (25th ed. 1990) Unfortunately, countertransference also often occurs and it is "the analyst's transference (often unconscious) of his emotional needs and feelings toward the patient, with personal involvement to the detriment of the desired objective analyst-patient relationship." *Id.* at 364.

Paul, to defend him. St. Paul retained counsel to defend Subotnik, but denied coverage and defended Subotnik under a full reservation of rights. Subotnik agreed not to institute a declaratory judgment action against St. Paul to determine the issue of coverage.

Prior to trial, McNicholes notified the attorney St. Paul retained to defend Subotnik that she wished to settle the case. St. Paul did not pursue settlement with McNicholes and continued to maintain that there was no coverage for Subotnik's actions; no one ever instituted a declaratory judgment action to determine coverage. McNicholes then notified St. Paul that she would try to negotiate a settlement directly with Subotnik in accordance with the principles set out in *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982) (en banc).

McNicholes and Subotnik settled the case for $650,000, with McNicholes stipulating that she would seek collection only from St. Paul, not Subotnik. In the ensuing garnishment proceedings, St. Paul continued to deny coverage and moved for summary judgment. In addition to denying coverage, St. Paul alleged that the settlement was void because Subotnik breached his duty to cooperate when he settled directly with McNicholes, and that the agreement was reached by fraud and collusion. The District Court granted St. Paul's motion for summary judgment, but upon McNicholes's motion, subsequently vacated its order. *Vetter v. St. Paul Fire & Marine Ins. Co.*, No. Civ. 3–89–556 (D.Minn. Nov. 30, 1991).[4]

■ McNicholes then moved for and was granted summary judgment, and St. Paul filed its notice of appeal. McNicholes has filed a motion to dismiss the appeal, arguing that St. Paul's notice of appeal was untimely. The motion is denied. We conclude that in view of the District Court's June 19, 1992, order granting St. Paul's timely motion to extend the appeal deadline based on the court's finding of excusable neglect, *see* Fed. R.App.P. 4(a)(5), St. Paul's June 4, 1992, notice of appeal, which was within the thirty-day extension granted by the June 19 order,

was sufficient to invoke the jurisdiction of this Court. It was not necessary for St. Paul to file a further notice of appeal after June 19. Instead, the June 19 order retroactively validated the June 4 notice of appeal. Our jurisdiction established, we turn to the merits of St. Paul's appeal.

■ "We review a grant of summary judgment de novo." *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992). The standard we apply is the same as that applied by the trial court: whether the record shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). We also review de novo the District Court's determination of disputed points of state law. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

In granting summary judgment in favor of McNicholes, the District Court correctly noted that a *Miller–Shugart* settlement agreement is enforceable against an insurer if (1) the agreement is reasonable and prudent, (2) the insured did not violate his duty to cooperate with the insurer, and (3) the agreement is not the product of fraud and collusion. *Miller*, 316 N.W.2d at 733–35. Based on the undisputed evidence, the court determined that the settlement agreement between Subotnik and McNicholes satisfied all three requirements of *Miller* and that Subotnik's conduct constituted professional malpractice and is covered as a matter of law by the St. Paul policy. Therefore, the court concluded, McNicholes was entitled to summary judgment against St. Paul.

Seeking reversal, St. Paul argues that, given the undisputed facts of the case, the District Court erred in determining that (1) Subotnik did not breach his duty to cooperate with St. Paul by entering into the settlement agreement and (2) the settlement agreement is not the product of fraud or

---

4. This case originally was assigned to The Honorable Edward J. Devitt, who entered the initial orders referred to in this portion of the text.

Upon Judge Devitt's death, the case was reassigned to Judge Magnuson, who ultimately granted McNicholes's motion for summary judgment.

collusion. St. Paul does not challenge the District Court's determination that coverage exists for Subotnik's conduct. Although St. Paul argues that the settlement agreement is couched in terms calculated to deprive St. Paul of certain coverage defenses, St. Paul's appeal calls into question only the validity of the agreement, not the determination of coverage.

We turn first to St. Paul's arguments concerning Subotnik's alleged breach of his duty to cooperate with his insurer. St. Paul contends that Subotnik breached his duty to cooperate because he purposefully inserted language into the settlement agreement that deprived St. Paul of certain coverage defenses. St. Paul argues that McNicholes and Subotnik prejudicially "steered" the language of the stipulation away from McNicholes's intentional tort claims, claims that were contained in the original complaint but would not be covered under the liability policy, and toward the allegations of negligence and professional malpractice, claims that would be covered under the liability policy, therefore making the stipulation void and unenforceable. We disagree.

In *St. Paul Fire & Marine Insurance Co. v. Love,* 459 N.W.2d 698 (Minn.1990) (en banc), the Supreme Court of Minnesota held that when a sexual relationship develops between therapist and patient as a consequence of mishandled transference and countertransference the resulting injury to the patient is covered under the therapist's professional malpractice policy: "The sexual conduct, to be sure, is aberrant and unacceptable, but it is so related to the treatment contemplated that it comes within the scope of the insurance coverage for professional services provided or withheld." *Id.* at 702. McNicholes has submitted substantial evidence that her damages were caused by Subotnik's mishandling of the transference-countertransference phenomenon, and St. Paul has offered no evidence to the contrary.

The *Love* case thus controls the question of coverage, and, together with McNicholes's uncontradicted evidence, supports the language of the settlement agreement. Contrary to St. Paul's assertions, the plaintiffs' complaint in *Love,* like McNicholes's complaint here, alleged not only negligence, but also intentional torts.[5]

■ "While the defendant insureds have a duty to cooperate with the insurer, they also have a right to protect themselves against plaintiff's claim." *Miller,* 316 N.W.2d at 733. When an insurer denies coverage, an insured defendant does not breach his duty to cooperate by entering a settlement with the plaintiff that serves the insured's best interests; indeed, the defendant is expected to do so. *See id.* at 733–34. Although at first glance it appears unfair to the insurer to allow the insured to negotiate a settlement in the insured's best interest while bargaining with the insurer's money, the insurer is not left dancing in the dark. The insurer can obtain a judicial determination as to whether coverage actually exists; if there is no coverage for the insured's actions, the insurer cannot be bound by the settlement agreement. In addition, the insurer has the protection of the *Miller* test to ensure that the settlement agreement is not the product of fraud and collusion and that it is reasonable and prudent.

We note that the Minnesota decisions speak with one voice in their interpretation of *Miller–Shugart* agreements, agreeing that a settlement made before an insurer acknowledges coverage is not a violation of the duty to cooperate. *See Alton M. Johnson Co. v. M.A.I. Co.,* 463 N.W.2d 277, 278 n. 1

---

5. Although *St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698 (Minn.1990) (en banc), is the Minnesota case that establishes that sexual activity between therapist and patient resulting from the therapist's mishandling of the transference-countertransference phenomenon is professional negligence and therefore is covered by a policy insuring the therapist against malpractice claims, St. Paul failed to mention the case in its brief. When asked at oral argument to distinguish the case, St. Paul's counsel stated that in the case at hand, McNicholes's complaint contained allegations of intentional wrongs such as assault and battery, whereas in *Love* there were no allegations of intentional wrongs. Counsel's contention is incorrect, as "the plaintiff ... couched the titles of the several counts of her complaint in terms of negligence and breach of contract as well as the *intentional infliction of harm.*" *Id.* at 702 (Coyne, J., dissenting) (emphasis added).

(Minn.1990) (en banc); *S.G. v. St. Paul Fire & Marine Ins. Co.*, 460 N.W.2d 639, 643–44 (Minn.Ct.App.1990); *see also Federal Deposit Ins. Corp. v. Gordinier*, 783 F.Supp. 1181, 1189, 1192 (D.Minn.1992), *rev'd on other grounds*, 993 F.2d 155 (8th Cir.1993). In *S.G.*, for example, the insured (as here) faced the possibility of a large judgment and knew from his attorney that similar cases had yielded high jury verdicts. The defendant in *S.G.* (St. Paul) had stated that it might deny coverage and had agreed to provide a defense with a reservation of the right to deny coverage. The court, observing that "[i]t was clearly in the insured's best interest to settle the claim as he did" held that in these circumstances there was no breach by the insured of the duty to cooperate. *S.G.*, 460 N.W.2d at 644. We discern no reason to reach a different result here.

■ St. Paul relies upon *Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865 (Minn. 1989) (en banc), and *Steen v. Those Underwriters at Lloyds, London*, 442 N.W.2d 158 (Minn.Ct.App.1989), to support its contention that Subotnik breached his duty to cooperate. Its reliance on these cases is misplaced. As the District Court concluded, the "*Buysse* and *Steen* line of cases apply [sic] only in cases where the [insurer] admits coverage prior to settlement." *Vetter v. Subotnik*, No. Civ. 3–89–556, 1992 WL 554367, order at 5 (D.Minn. April 7, 1992) (citing *S.G.*, 460 N.W.2d at 643). An insured does not breach his duty to cooperate when the insurer denies "the existence of *any* coverage for the claim" and the insured is exposed "to liability for the entire amount of any damage award." *Buysse*, 448 N.W.2d at 872. As mentioned earlier, here St. Paul denied the existence of any coverage for McNicholes's claim against Subotnik. It follows that the cases relied upon by St. Paul do not support its argument that Subotnik breached his duty to cooperate by settling with McNicholes.

We turn next to St. Paul's contention that the settlement agreement is the product of fraud and collusion because Subotnik received several side benefits from the agreement and because the amount agreed upon was not reasonable and prudent. St. Paul's argument confuses the issue of fraud and collusion with the separate issue of reasonable and prudent settlement. The settlement agreement is not the product of fraud and collusion simply because St. Paul believes that the amount agreed upon is not reasonable and prudent.

■ St. Paul has offered no evidence to raise a genuine issue of fact on the question of fraud and collusion. That Subotnik bargained for and received personal benefits is not evidence of fraud and collusion. Furthermore, St. Paul misses the point with its contention that there was fraud and collusion because Subotnik felt that the amount settled for was "irrelevant," and because he settled for $650,000 even though he did not actually believe that McNicholes was damaged. The record is replete with uncontradicted evidence that a sexual relationship developed between Subotnik and McNicholes as a result of Subotnik's mishandling of the transference-countertransference phenomenon, and also with uncontradicted evidence of the severe psychological injuries McNicholes consequently suffered. Moreover, the affidavits detailing the large recoveries obtained by plaintiffs in other similar cases are uncontroverted. Subotnik's subjective beliefs about McNicholes's claim are not evidence of fraud and collusion. If to gain personal benefits Subotnik had offered McNicholes an unreasonably large amount of money to settle her claim, then the agreement would be unenforceable because it would not be reasonable and prudent, not because it was the result of fraud and collusion. The District Court correctly determined that on the undisputed evidence the agreement was not the product of fraud and collusion.

■ Finally, we consider the question of whether McNicholes met her burden of showing that the settlement is reasonable and prudent. *See Miller*, 316 N.W.2d at 735. The amount that is settled upon is reasonable and prudent if it is "what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim," taking into consideration "the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Id.* McNicholes submitted substantial evidence to show that

Subotnik committed malpractice and that his malpractice caused her to suffer great harm. St. Paul offered no evidence to the contrary, and it conceded as much at oral argument. Furthermore, McNicholes offered evidence that the amount settled upon is reasonable based on settlements or jury verdicts in similar cases against therapists.[6] Again, St. Paul offered no evidence to the contrary. We conclude that no genuine issue of fact exists as to whether the settlement reached was reasonable and prudent.

We believe the District Court correctly determined that St. Paul has failed to create a genuine issue as to any material fact and that McNicholes is entitled to judgment as a matter of law. Accordingly, the judgment of the District Court is affirmed. McNicholes's motion to supplement the record is denied as moot.

---

**6.** This evidence includes affidavits from several attorneys stating their knowledge of settlements and jury verdicts in similar cases that were far in excess of the settlement here. Moreover, Subotnik's attorney advised Subotnik of the risk that if the case were to go to trial there might be a verdict against him in excess of the $1,000,000 policy limit.