# STATE FARM FIRE AND CASUALTY COMPANY

### v.

## HELMINIAK et al.

Court of Common Pleas of Ohio,
Lucas County.

No. 94–2710.

Decided April 28, 1995.

*Meister, Ayers & Meister Co.,* and *Mark J. Metusalem,* for State Farm Fire and Casualty Company.

*Balk, Hess & Miller* and *Ronald V. McCourt,* for Richard L. and Candace A. Helminiak.

*Fuller & Henry, Martin D. Carrigan, Daniel T. Ellis* and *Margaret G. Beck,* for John F. and Susan M. Kieffer.

FREDERICK H. MCDONALD, Judge.

This declaratory judgment action is before the court upon a motion for summary judgment filed by plaintiff State Farm Fire and Casualty Company ("State Farm"). Upon consideration of the pleadings, the competent summary judgment evidence, the written arguments of counsel, and the applicable law, I find that the motion should be granted in part and denied in part.

*I*

The following facts are pertinent to this motion. In 1992, John and Susan Kieffer purchased a parcel of real estate from defendants Richard L. and Candace Helminiak. The real estate is located in a subdivision in Springfield Township, Ohio, known as Stone Oak Country Club Plat 1. The property runs along a ditch known as Drennan Ditch, and beyond Drennan Ditch is a lake. Prior to purchasing the property, having lake access in mind, Mr. Kieffer asked Mr. Helminiak if construction of a bridge over Drennan Ditch would be allowed. Mr. Helminiak replied that he would check with Robert Cavalear of the Architectural Control Committee of the Stone Oak Homeowners' Association. Mr. Helminiak reported back to Mr. Kieffer that a bridge would be allowed.[1] The Kieffers subsequently purchased the lot and had a home constructed on the lot. They then began construction of the bridge and the Stone Oak Homeowners' Association asked them to remove it. After many months of discussion at homeowners' association meetings, the Kieffers' bridge was forcibly removed, causing minor damage to the bridge itself.

The Kieffers sued several individuals and entities, including Richard L. and Candace Helminiak.[2] The claims against the Helminiaks in the underlying suit are misrepresentation, trespass, and conversion. The fifth cause of action seeks recission of the purchase agreement because of the alleged misrepresentation. Upon being served with the complaint in the underlying suit, the Helminiaks notified State Farm, their homeowners' insurance carrier. (The Helminiaks also have an umbrella policy with State Farm.) State Farm then filed the instant complaint for declaratory judgment, seeking a declaration that it has no obligation to defend or indemnify the Helminiaks with respect to the underlying suit. It now moves for summary judgment on its complaint. Both the Kieffers and the Helminiaks oppose the motion.

*II*

The general rules governing motions for summary judgment filed pursuant to Civ.R. 56 are well established. In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio stated the requirements that must be met before a motion for summary judgment can be granted:

---

1. At this point, the parties differ as to the facts. Mr. Helminiak claims that he reported to Mr. Kieffer that a *properly approved* bridge would be allowed. Mr. and Ms. Kieffer deny that Mr. Helminiak ever said anything about approval being necessary.

2. This case, Lucas County Common Pleas case No. 94–1561, will be subsequently referred to as "the underlying suit."

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment."

However, in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, the Supreme Court of Ohio held imposed a burden on the nonmoving party as well. It stated:

"A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. (*Celotex v. Catrett* (1986), 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265], (approved and followed.)" See, also, *Sibberson v. Mercy Hosp.* (Mar. 31, 1989), Lucas App. No. L–88–236, unreported, 1989 WL 29846.

The Sixth District Court of Appeals has consistently held that motions for summary judgment should be granted with caution in order to protect the nonmoving party's right to trial. As stated by the court in *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 14–15, 13 OBR 8, 16, 467 N.E.2d 1378, 1386:

"We recognize that summary judgment, pursuant to Civ.R. 56, is a salutary procedure in the administration of justice. It is also, however, a procedure which should be used cautiously and with the utmost care so that a litigant's right to a trial, wherein the evidentiary portion of the litigant's case is presented and developed, is not usurped in the presence of conflicting facts and inferences. * * * It is settled law that '[t]he inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion, * * *' which party in the instant case is appellant. * * * It is imperative to remember that the purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist." (Citations omitted.) See, also, *Bowlds v. Smith* (1961), 114 Ohio App. 21, 29, 18 O.O.2d 305, 309–310, 180 N.E.2d 184, 189–190.

### III

The sole issue is whether State Farm is entitled to a declaration that it has no duty to defend or indemnify the Helminiaks in the underlying suit. The general test for determining whether an insurer has a duty to defend an insured

has been set out in *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874. According to the Ohio Supreme Court:

"The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make a defense, regardless of the ultimate outcome of the action or its liability to the insured." (Citations omitted.) *Trainor, supra,* paragraph two of the syllabus.

■ Later case law established that if the underlying complaint does not clearly bring the allegations within coverage, the test is whether the allegations state a claim that is "arguably or potentially" within the policy's coverage. *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, syllabus. Subsequent case law has limited the holding in *Willoughby Hills.* Now, according to the Sixth District Court of Appeals, the test for determining an insurer's duty to defend depends on the breadth of representation offered by the insurer. *Bay Mfg. Co. v. Cincinnati Ins. Co.* (Feb. 5, 1993), Erie App. No. E–92–22, unreported, 1993 WL 24670. Citing *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, the court in *Bay Manufacturing* noted that where the insurer agrees to defend even if the allegations in the underlying complaint are groundless, false, or fraudulent, then a determination of the duty to defend focuses solely on the allegations within the four corners of the underlying complaint. If the allegations on the face of the complaint state a claim arguably or potentially within the policy's coverage, then the insurer must accept the defense. See, also, *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, paragraph one of the syllabus.

■ If, on the other hand, the "groundless, false, or fraudulent" language does not appear in the policy, the determination of the duty to defend is not limited to the allegations in the underlying complaint and, in order to defeat coverage, the insurer may offer extrinsic evidence of the "true facts" of the underlying complaint. *Bay Mfg., supra.* In this case, the policies at issue do not contain the "groundless, false or fraudulent" language. Therefore, all competent summary judgment evidence will be considered in determining whether a duty to defend and/or indemnify exists.

The homeowner's policy (# 35–69–2016–1) provides:

"**COVERAGE L—PERSONAL LIABILITY**

"If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an occurrence, we will:

"1. pay up to our limit of liability for the damages for which the insured is legally liable; and

"2. provide a defense * * *." (Emphasis in original.)

"Occurrence" is defined as " * * * an accident, including exposure to conditions," which results in bodily injury or property damage during the policy period. "Property damage" is defined as:

" * * * physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an **insured** is not **property damage**." (Emphasis in original).

The parties appear to agree that the only relevant exclusions are 1.a.(1) and (2), which read:

"1. Coverage L and Coverage M do not apply to:

"a. **bodily injury** or **property damage**:

"(1) which is either expected or intended by an insured; or

"(2) to any person or property which is the result of willful and malicious acts of an **insured** * * *." (Emphasis in original.)

Similarly, the umbrella policy (# 35–11–9361–6) provides:

"1. **Coverage L—Personal Liability.** If you are legally obligated to pay damages for a **loss,** we will pay your **net loss** minus the **retained limit.** * * *" (Emphasis in original.)

The policy also promises to defend if coverage is afforded by the umbrella policy but not by another policy available to the insured. "Loss" is defined as:

" * * * an accident that results in **personal injury** or **property** damage during the policy period. This includes injurious exposure to conditions." (Emphasis in original.)

Again, the parties appear to agree that the only relevant exclusion is Exclusion 2, which excludes coverage for personal injury or property damage expected or intended by the insured or which is the result of the insured's willful or malicious acts.

In this case, a duty to defend will exist if, based on all competent summary judgment evidence of record, the claims against the Helminiaks arguably or potentially fall within policy coverage. More specifically, a duty to defend exists if property damage was arguably or potentially caused by an "occurrence," and the cause of the property damage was neither expected or intended nor the result of the Helminiaks' malicious acts.

At the very least, the parties appear to agree that property damage occurred to the bridge when it was moved. (Perhaps other elements of property damage occurred as well.) This property damage was arguably or potentially caused by the Kieffers' reliance on Mr. Helminiak's statement about the bridge. The Kieffers contend that Mr. Helminiak's statement was a negligent misrepresentation.[3] Based on the evidence, I find that genuine issues of material fact exist as to whether a negligent misrepresentation occurred.[4] A negligent misrepresentation, however, would be an "occurrence" within the meaning of the policy, since it is an "accident." According to the Ohio Supreme Court, the ordinary meaning of "accidental" is "unexpected" as well as "unintended." *Hybud Equip. Co. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 666, 597 N.E.2d 1096, 1102–1103, certiorari denied (1993), 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152; see, also, *Munchick v. Fid. & Cas. Co. of New York* (1965), 2 Ohio St.2d 303, 306, 31 O.O.2d 569, 571, 209 N.E.2d 167, 170; *Owens–Illinois, Inc. v. Aetna Cas. & Sur. Co.* (C.A.6, 1993), 990 F.2d 865, 872. Since Mr. Helminiak's alleged negligent misrepresentation was unintentional and thus "accidental," it is an "occurrence." Further, since it was unintentional, the exclusions for expected or intended and malicious damage do not apply. Therefore, the misrepresentation claim against Mr. Helminiak arguably or potentially falls within policy coverage and, as a matter of law, State Farm is not entitled to a declaration that it has no duty to defend or indemnify the Helminiaks with respect to the misrepresentation claim. Thus, State Farm is not entitled to summary judgment on this issue.

The complaint in the underlying suit also alleges trespass and conversion against the Helminiaks. However, the evidence is undisputed that neither Mr. nor Ms. Helminiak trespassed or converted the bridge. Even if the Helminiaks did commit these acts, they would be excluded under the "expected or intended" or "malicious acts" exclusions. Therefore, State Farm is entitled to summary

---

3. In its reply memorandum, State Farm argues that Mr. Helminiak's representation would not be actionable unless it rose to the level of fraud. However, Ohio recognizes the tort of negligent misrepresentation. See *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838. None of the parties appears to argue that Mr. Helminiak's alleged representation was anything other than negligent.

4. According to the Ohio Supreme Court, the elements of negligent misrepresentation are as follows:

"One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis in original.) *Delman, supra,* quoting 3 Restatement of the Law 2d, Torts (1965) 126–127, Section 552(1).

Questions of fact exist as to whether the Kieffers justifiably relied on Mr. Helminiak's statements and whether Mr. Helminiak failed to exercise reasonable care.

judgment and a declaration that it is not obligated to defend or indemnify the Helminiaks with respect to the trespass and conversion claims.

Likewise, the claim seeking recision of the purchase agreement is clearly not covered under the policy because it does not seek damages. Therefore, State Farm is entitled to summary judgment and a declaration that it is not obligated to defend or indemnify the recision claim.

### JOURNAL ENTRY

It is ORDERED that the motion for summary judgment filed by State Farm Fire and Casualty Company is GRANTED as to the claim for trespass, the claim for conversion, and the request for recision of the purchase agreement. It is DECLARED that State Farm has no duty to defend or indemnify Richard L. and Candace Helminiak with respect to those claims in Lucas County Common Pleas case No. 94–1561.

It is further ORDERED that State Farm's summary judgment motion is DENIED as to the misrepresentation claim in Lucas County Common Pleas case No. 94–1561.

*Judgment accordingly.*