DECISION
Charles D. Hess, Louann W. Hess, and Hess Investment Co., plaintiffs-appellants, appeal a judgment of the Franklin County Court of Common Pleas. The trial court granted a motion for summary judgment filed by Cincinnati Insurance Company, defendants-appellees. We affirm.
On July 18, 1997, David S. and Jeanne N. Schoedinger ("Schoedingers") filed a civil complaint against appellants. In the complaint, the Schoedingers stated that they purchased a home located in Upper Arlington, Ohio from appellants on or about August 15, 1996. A residential property disclosure form had been prepared by appellants in accordance with Ohio law, which included the question:
 Q. Structural components (foundation, floors, interior and exterior walls): Do you know of any movement, shifting, deterioration, material cracks (other than visible minor cracks or blemishes) or other material problems with the foundation, floors, or interior/exterior walls?
Appellants answered "[n]o" to the question. The Schoedingers claimed that they did not notice any problems with the foundation during their inspection of the home prior to the closing. On May 13, 1996, the Schoedingers entered into a real estate purchase contract and on May 20, 1996, a professional inspection company to identify any problems that existed or repairs that needed to be made inspected the home. No problems were found concerning the foundation of the home. The Schoedingers completed the purchase of the home on August 15, 1996.
The Schoedingers claimed in their complaint that:
 Within months of obtaining possession of the home, the Schoedingers realized, firsthand, that the Hesses made a number of material misrepresentations with respect to the condition of the premises, and specifically regarding the structural integrity of the dwelling. After removing the carpet in the living room, the Schoedingers discovered a horizontal crack between the floor and the interior wall, at some points as wide as four to five inches. This crack, which was covered by carpeting so that it could not be seen with the naked eye, had clearly been repaired in the recent past, although those repairs are now, themselves, deteriorating.
They also claimed they found "significant termite infestation inside the house and that the house had asbestos shingles."
The Schoedingers claimed that they had incurred damages because of the following actions by appellants:
 [They] negligently and/or innocently misrepresented to the Schoedingers the nature, quality, character and value of their home * * *.
* * *
 [They] made material misrepresentations and omissions of material fact during the sale of their home, which were intentionally made for the purpose of inducing the Schoedingers into purchasing said home.
* * *
 [They] had a duty to disclose these latent defects to [the Schoedingers] before closing, instead of concealing them and profiting from such concealment by obtaining a higher purchase price.
Appellants had a homeowner's insurance policy with appellee for the home they sold to the Schoedingers. On December 30, 1998, appellants filed a complaint with the trial court seeking declaratory relief pursuant to R.C. 2721.01. Appellants asked the court to declare that the Schoedingers' claims against them were within the scope of their homeowner's insurance policy. Appellants also requested a declaration that they were entitled to a defense and indemnification from the Schoedingers' claims by appellee. On October 7, 1999, appellee filed a motion for summary judgment arguing that it did not owe a duty to defend or indemnify appellants for any of the allegations made by the Schoedingers.
On December 22, 1999, the trial court granted appellee's motion for summary judgment. The court held that the Schoedingers' claims against appellants "were not `arguably or potentially' within the scope of [appellants'] policy, and [appellee] does not have a duty to defend." Appellants appeal this decision and present the following assignment of error:
 The trial court erred in overruling Appellants' motion for summary judgment and in granting Appellees' (sic) motion for summary judgment, in that the trial court should have issued a declaratory judgment that Appellee Cincinnati Insurance Company is obligated to provide a defense and coverage to the Appellants under the insurance policies issued to the Appellants[.]
Appellants argue in their assignment of error that they were entitled to a defense from appellee based upon their homeowner's insurance policy. According to their policy, if a "claim is made or a suit is brought against any insured for damages because of bodily injury,personal injury, or property damage arising out of an occurrence to which this coverage applies, [appellee] will * * * provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent."
Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Rodgers v. Custom Coach Corp. (June 22, 2000), Franklin App. No. 99AP-1167, unreported.
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party.Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion."Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Baker v. The Buschman Co. (1998),127 Ohio App.3d 561, 566.
An insurance company that agrees to defend claims against the insured regardless of whether the allegations are false, groundless, or fraudulent has an absolute duty to defend an action where the complaint states a claim that is arguably within the policy coverage. Cogar v.Commercial Union Ins. Co. (Feb. 9, 1999), Medina App. No. 2816-M, unreported, following Sanderson v. Ohio Edison Co. (1994),69 Ohio St.3d 582, paragraph one of the syllabus.
 A liability insurer's obligation to its insured arises only if the claim falls within the scope of coverage. The insurer need not provide a defense if there is no set of facts alleged in the complaint which, if proven true, would invoke coverage. Thus, if it is established that the claim falls within an exclusion to coverage, the insurer is under no obligation to defend the insured. Cincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604, 605 (Citations omitted).
"[I]f there is no set of facts alleged in the complaint against an insured which, if proven true, would result in the insurance company's duty to pay damages, then the insurance company need not provide a defense." Cole v. Am. Industries Resources Corp. (1998),128 Ohio App.3d 546, 554. Therefore, in order to determine whether appellee had a duty to defend appellants, we must find that the Schoedingers' complaint states a claim that is arguably within appellants' policy coverage.
According to appellants' policy, in order to require appellee to defend them, it must be shown that the damages arose "out of an occurrence to which this coverage applies." An occurrence is defined in the definition section of the policy as "an accident, including exposure to conditions, which results, during the policy period, in: [a.] bodily injury, [b.]property damage, [c.] personal injury." Therefore, it must also be shown that the damages alleged in the complaint arose "out of an occurrence to which this coverage applies."
In the present case, a review of the Schoedingers' complaint against appellants reveals they claimed they suffered economic damages based in part upon representations made by appellants. The Schoedingers claim that appellants were liable for breach of contract, negligent or innocent misrepresentation, misrepresentation or concealment, breach of covenants of good faith and fair dealing, and negligence. The defects to the home that the Schoedingers complained of were cracks between the floor and the interior wall of the home, significant termite infestation, and asbestos shingles. The Schoedingers claimed that appellants should be found to be liable "in the amount of $479,197.29 compensatory damages, $100,000 in punitive damages, plus reasonable attorney fees."
While appellants argue that the basis of the Schoedingers' complaint against them was the cracks, termites, and asbestos shingles, a review of the Schoedingers' complaint does not show that they alleged that the cracks, termites, or the placement of the asbestos shingles were caused by appellants. Each of the allegations that the Schoedingers made against appellants involves representations made by appellants during the sale negotiations for the home.
The Schoedingers simply allege that appellants knew of the conditions prior to the sale of the home, and that appellants had an obligation to disclose their knowledge of those conditions prior to the completion of the sale. Therefore, it cannot be established from the Schoedingers' complaint that the damages were "arising out of an occurrence to which this coverage applies." The economic damages the Schoedingers allege in their complaint arose from appellants' actions, and not simply from the fact that they existed because the property damage did not arise "out of an occurrence" alleged in the complaint. The property damage had already occurred at the time the Schoedingers alleged appellants committed the acts that would cause appellants to be liable. A review of appellants' insurance policy shows that no coverage is provided to reimburse appellants for losses incurred caused by their alleged negligent actions during contract negotiations.
Appellants alternatively argue that since the Schoedingers claimed they had to raze the house because of the extent of the damage to the property, the "razing of the house also clearly qualifies as `property damage' as defined in the policy." The problem with appellants' argument is that the determination of whether appellee had a duty to defend appellants is based upon the allegations and facts alleged in the Schoedingers' complaint. An examination of the Schoedingers' complaint does not show that they allege that razing the house was "property damage." In fact, the razing of the house was not even alleged in the complaint as a fact upon which relief could be granted.
Appellants also argue that we should apply the reasoning of State FarmFire Cas. Co. v. Helminiak (1995), 74 Ohio Misc.2d 91 . In Helminiak, the homeowners told the buyers that a bridge could be built over a ditch. After the bridge was built, the homeowners association forcibly removed it. The buyers sued the homeowners claiming that their statement that a bridge could be built over the ditch was a negligent misrepresentation. The homeowners thereafter filed a complaint against the insurance company for which they had a homeowner's policy, claiming that the insurance company had an obligation to defend them. The court of common pleas agreed, finding that the removal of the bridge caused "property damage [which] was arguably or potentially caused by the [buyers] reliance on [the sellers] statement about the bridge." Id. at 97. The difference between the present case and Helminiak is that in the present case, damage to the home occurred before the alleged negligent misrepresentation occurred.
Appellants' argument that property damage covered by the insurance policy happened after the alleged negligent misrepresentation occurred (the razing of the home by the Schoedingers) similar to the Helminiak
case is also not correct. The razing of the home did not occur because of the alleged negligent misrepresentation, but instead, as stated in a memorandum in their civil case against appellants, because "[a]fter discovering the grand crack, the Schoedingers consulted numerous expertswho advised them that because of the risks relating to doing nothing andbecause of the numerous difficulties in trying to shore up the slope, itwould be advisable to raze the home and build a new one." The home was razed because of the discovery of the cracks and the inability to repair their deteriorating condition, not because of the alleged negligent misrepresentations of appellants. Additionally, appellants' policy coverage "does not include settling, cracking, shrinking, bulging or expansion." The policy also states that appellee will not pay for "loss resulting directly or indirectly [from] (1) mudflow, earth sinking, rising or shifting; (2) landslide."
Appellants' policy coverage also includes a "Personal Umbrella Liability Endorsement." Under this umbrella policy, coverage is allowed for "occurrences." An occurrence is defined in the umbrella policy as "an accident, happening, event or series of related events that unexpectedly or unintentionally causes Personal Injury or Property Damage during the endorsement period." Applying the same analysis we have already applied to appellants' homeowner policy, appellants cannot claim that the allegations in the Schoedingers' complaint are arguably or potentially within the scope of appellants' policy because the alleged negligent misrepresentations did not cause the property damage.
We also note that our decision is in accordance with several recent state court decisions involving similar facts. In Bush v.Shoemaker-Beal (1999), 26 Kan. App. 2d 183, 987 P.2d 1103, the appellate court held that the homeowners insurance policy did not cover the negligent misrepresentations of the homeowner to the home buyer "because the damage to the conveyed property was not caused by the negligent misrepresentations of [the homeowner]. The damage was caused by termites. * * * [T]here is no coverage because [the buyer] seeks economic damages, not property damages." Id. at 185. With facts similar to theBush case, a Louisiana Appellate Court stated:
 Based on the allegations of this petition, [the home buyer] seeks to hold [the sellers] liable for the contractual breach and resultant economic loss suffered by [the buyer] as a result of the termite damage and the drain line problems in the property.
 Under the clear terms of the policy, [the sellers] are only entitled to coverage under the policy for an occurrence which causes bodily injury or property damage. * * * The misrepresentation alleged in [the buyer's] suit did not cause the termite (property) damages, rather, the alleged misrepresentation occurred during the sale of the property and after the termite damage had already occurred. The damages suffered by [the buyer] as a result of her purchase of the property and [the sellers] alleged actions in concealing defects in the property therefore do not constitute "property damage" within the meaning of the insurance policies. Rather, any damages suffered by [the buyer] are of a pecuniary nature — damages due to the diminished value of a home infested with termites and in need of drain line replacement. [The buyer's] claims sound in negligent and intentional misrepresentation, which claims by their very nature are not for "property damage" and therefore do not fall within the scope of coverage afforded by the Metropolitan or State Farm policy. Lawyer v. Kountz
(La.App. 1998), 716 So.2d 493, 498.
In Freedman v. Cigna Ins. Co. of Texas (Tex.App. 1998), 976 S.W.2d 776, the appellate court found that the insurance company did not have a duty to defend a homeowner in a suit based upon alleged misrepresentations made by the homeowner to a buyer because "[a]n `occurrence' under the insurance policies is defined as an accident, including exposure to conditions, resulting in bodily injury or property damage during the policy period * * * and [t]he occurrence for which the [buyer] sued the [homeowner] was not the roof's collapse, but rather, the [homeowners] misrepresentations about the condition of the roof." Id. at 778.
Therefore, after having reviewed the complete record, we find that the trial court did not err when it concluded that the Schoedingers' claims against appellants were not arguably or potentially within the scope of appellants' policy, and appellee did not have a duty to defend. Appellants' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
TYACK and DESHLER, JJ., concur.