JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Westfield Insurance Companies ("Westfield"), appeals the final judgment issued by the trial court in its declaratory judgment action, which concluded that coverage existed and that Westfield is obligated to indemnify its insured. In February 2000, Schilling Square Development, Ltd., Eric Senders, and Cary Senders ("Schilling"), owners of a residential construction project, filed a complaint against D.C. Builders, Inc., improperly named as "Builders D.C. Corp.," and Nelson Barmen ("Builders"), the general contractor/promoter of the residential construction project. The complaint, filed in Cuyahoga County Court of Common Pleas, titled Schilling SquareDevelopment, Ltd., et al. v. Builders D.C. Corp., et al., and bearing case number 402375 (the "underlying action"), alleged breach of contract, fraud, negligent misrepresentation, and conversion in connection with Builders' renovation of certain condominiums and townhouses owned by Schilling.
 {¶ 2} Pursuant to the underlying action, in June 1996, Builders submitted a fixed price bid for the renovation of the condominiums, which was verbally accepted by Schilling and included an understanding that Builders would be responsible for the selection, hiring, supervision, coordination, and management of all trades, as well as the timely completion of the renovation. Also as alleged in the underlying action, in June 1997, Builders submitted an estimate of the total cost to renovate the townhouses, which Builders allegedly knew was underestimated, but failed to disclose such inadequacy to Schilling. As a result, the renovation costs escalated to a point where Schilling experienced "severe cash flow difficulties," the renovation was at least four months behind schedule, and subsequently, Builders abandoned the renovation projects. The underlying action, raising breach of contract, fraud, negligent misrepresentation, and conversion on behalf of Builders, sought compensatory damages.
 {¶ 3} After Builders put its insurer, Westfield, on notice of the underlying action and Westfield agreed to defend Builders pursuant to a reservation of rights, Westfield filed a declaratory judgment action in October 2000. Pursuant to the declaratory judgment action, Westfield sought to obtain a determination that it did not owe a duty to indemnify Builders in the underlying action, arguing that such claims are not covered under the Commercial Insurance Policy (the "policy") issued to Builders.
 {¶ 4} In December 2001, Builders, without the knowledge or consent of Westfield, entered into a consent judgment in the underlying action with Schilling. Pursuant to the consent judgment, Schilling dismissed all claims against Builders, except for the negligent misrepresentation claim, and judgment was entered in favor of Schilling (and against Builders) in the amount of $850,000, "representing compensation for property damage and loss of use of tangible property proximately caused by [Schilling's] reliance upon [Builder's] negligent misrepresentations."
 {¶ 5} Thereafter, in the Westfield declaratory judgment action, the trial court granted Schilling's motion for summary judgment, denied Westfield's motion for summary judgment, and held that, pursuant to the policy, Westfield is obligated to indemnify Builders for the consent judgment obtained by Schilling in the underlying action. The trial court reasoned that Schilling, in the underlying action, made a claim against Builders for property damage, which was "accidental in nature, and arose from an `occurrence' under the policy." As a result, the trial court ordered that Schilling is "entitled to an order requiring Westfield to pay the full amount of the [consent] judgment." Westfield now appeals.
 I {¶ 6} For its first assignment of error, Westfield maintains that the trial court erred when it found indemnity coverage under the policy for the losses described in the underlying action. In particular, Westfield asserts that Schilling's sole claim against Builders in the underlying action for negligent misrepresentation does not constitute an "occurrence" under the policy because the misrepresentations did not result directly or indirectly in property damage or bodily injury. Moreover, Westfield further asserts that even if Schilling's negligent misrepresentation claim against Builders resulted in property damage so as to constitute an "occurrence" under the policy, such "occurrence" is specifically excluded by the policy. Based on the following reasons, we find Westfield's assertions to be well-taken.
 {¶ 7} The relevant coverage portions of the policy provide as follows:
 {¶ 8} "Section I — Coverages
 {¶ 9} "Coverage A. Bodily Injury and Property Damages Liability
 {¶ 10} "1. Insuring Agreement.
 {¶ 11} "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend any `suit' seeking those damages. We may at our discretion investigate any `occurrence' and settle any claim or `suit' that may result. * * *
 {¶ 12} "b. This insurance applies to `bodily injury' and `property damage' only if:
 {¶ 13} "(1) The `bodily injury' or `property damage' is caused by an `occurrence' that takes place in the `coverage territory;' and
 {¶ 14} "(2) The `bodily injury' or `property damage' occurs during the policy period.
 {¶ 15} "* * *
 {¶ 16} "Section V — Definitions
 {¶ 17} "* * *
 {¶ 18} "12. `Occurrence' means an accident; including continuous or repeated exposure to substantially the same general harmful conditions.
 {¶ 19} "* * *
 {¶ 20} "15. `Property damage' means:
 {¶ 21} "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
 {¶ 22} "b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the `occurrence' that caused it. * * *"
 {¶ 23} Pursuant to the policy, coverage depends upon the determination that the resulting property damage was caused by an "occurrence," which is defined as "an accident; including continuous or repeated exposure to substantially the same general harmful conditions." Although the policy does not define "accident," it is well established that "common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." Alexander v. Buckeye Pipeline Co. (1978),53 Ohio St.2d 241, 245-246, 374 N.E.2d 146; DiMarco v. Shay,154 Ohio App.3d 141, 2003-Ohio-4685, ¶ 20, 796 N.E.2d 572. For liability coverage to exist under the policy, the property damage must "arise out of an occurrence;" that is, an accident resulting in property damage. Cincinnati Ins. Co. v. Anders,99 Ohio St.3d 156, 2003-Ohio-3048, ¶ 35, 789 N.E.2d 1094.
 {¶ 24} In Cincinnati Ins. Co., the Supreme Court of Ohio answered the following certified question in the negative:
 {¶ 25} "Whether insurance policies covering personal injuries arising out of property damage provide coverage to homeowners who are sued for their negligent failure to disclose to purchasers damage to the property that occurred during the sellers' occupancy." 2003-Ohio-3048, at ¶ 14.
 {¶ 26} One of the two cases at issue in Cincinnati Ins. Co.
involved a complaint alleging that the sellers of a house failed to disclose structural, electrical, mechanical, and plumbing defects prior to the sale of the house. The only damage alleged by the purchasers of the house was the deterioration of the floor joists, which was caused by installation of fiberglass insulation with the vapor barrier on the wrong side. The sellers of the house requested that their insurer, Cincinnati Insurance Company, provide them with a defense pursuant to their homeowners' policy; however, their insurer refused to provide a defense under the policy. Thereafter, the trial court, pursuant to a declaratory judgment action, held that the homeowners' policy did not require the insurer to provide a defense against any of the claims made against its insured by the purchasers of the house. On appeal, the trial court's decision was affirmed, holding that the purchasers' claims were not arguably or potentially within the scope of the policy, and the insurer did not have a duty to defend. See Cincinnati Ins. Co., 2003-Ohio-3048, ¶ 2-5.
 {¶ 27} The other case at issue in Cincinnati Ins. Co.
involved a complaint filed by a purchaser of a home, alleging structural damage to the home caused by termite infestation, and that the sellers of the home intentionally misrepresented and/or concealed, negligently or recklessly misrepresented, and committed civil conspiracy by concealing such damage. The sellers of the home requested their insurer, GuideOne Mutual Insurance Company, to provide a defense in the action pursuant to its homeowners' policy. The insurer provided its insured a defense under a reservation of rights, believing that it had no duty to defend against the claims. The trial court, pursuant to a declaratory judgment action, granted summary judgment to the insurer and, on appeal, affirmed, holding that the homeowners' policy provides coverage only for claims which arise out of a negligent act or omission of the insured which causes the property damage alleged. Cincinnati Ins. Co., 2003-Ohio-3048, at ¶ 9-12.
 {¶ 28} In its analysis, the Supreme Court of Ohio reasoned that, in the first case, the property damage alleged had been caused by the faulty installation of the insulation and not the nondisclosure of the damage. The Supreme Court of Ohio stated as follows:
 {¶ 29} "The alleged negligent nondisclosure of the structural damage was not an accident that resulted in property damage but, rather, an accident that allegedly caused economic damages. The actual accident was the faulty installation of the insulation, leading to the structural deterioration of the house. The underlying claims of the [purchasers of the house] against the [sellers of the house] pertain to the nondisclosure of the damage, not the damage itself. Therefore, the underlying claims are outside the scope of the [homeowner's] policy." CincinnatiIns. Co., 2003-Ohio-3048, at ¶ 36.
 {¶ 30} Likewise, in the second case, the Supreme Court of Ohio reasoned that the property damage was allegedly caused by termite infestation and not the nondisclosure of the damage. In holding that the purchasers' claims did not qualify as an occurrence, the Supreme Court of Ohio stated that because "the nondisclosure of the infestation is not the occurrence; the infestation is the occurrence," the insurer has no duty to defend its insured against the purchasers' claims. Cincinnati Ins.Co., 2003-Ohio-3048, at P48-P49.
 {¶ 31} Although Cincinnati Ins. Co. involved a homeowners' insurance policy, the Ohio Supreme Court's analysis of what constitutes an "occurrence" resulting in property damage is analogous to the instant matter. Here, as alleged by Schilling in the underlying action (and the only claim that remained after the consent judgment), Builders negligently misrepresented their expertise and abilities, and negligently concealed and failed to disclose that they knew the estimate they provided to Schilling to renovate the townhouses was too low. As a result of the underestimation, Schilling alleged to have suffered "severe cash flow difficulties," as well as the delay in the renovation. Unlike Cincinnati Ins. Co., Schilling does not allege any resulting property damage from Builders' underestimation to renovate the townhouses.[1] Instead, Schilling alleges only economic loss, which is not covered under the policy.
 {¶ 32} Although Schilling alleges that Builders' negligently misrepresented the estimation of the renovation of the townhouses, it is apparent that Schilling's claim is that Builders knew, but failed to disclose, that the estimate to renovate the townhouses was too low. Such intentional conduct cannot, under any stretch of the imagination, be considered an "accident" constituting an "occurrence" under the policy.
 {¶ 33} In addition, Schilling's reliance upon State FarmFire and Cas. Co. v. Helminiak (1995), 74 Ohio Misc.2d 91,659 N.E.2d 385, for the proposition that a claim for negligent misrepresentation is accidental and constitutes an "occurrence" is misplaced. In State Farm Fire and Cas. Co., the purchasers of a parcel of land were assured by the seller that the homeowners' association would allow them to build a bridge over a ditch that runs along the parcel. After the purchasers partially completed the bridge, the homeowners' association asked them to remove it because it was not allowed. As a result, the purchasers' bridge was forcibly removed, causing minor damage to the bridge itself. See State Farm Fire Cas. Co.,74 Ohio Misc.2d at 93.
 {¶ 34} The purchasers filed a complaint against the seller, asserting negligent misrepresentation, trespass, and conversion in connection with the building and subsequent removal of the bridge. The seller notified State Farm Fire and Casualty Company, its homeowners' insurance carrier, of the complaint. State Farm Fire and Casualty Company filed a declaratory judgment action, seeking a declaration that it has no obligation to defend or indemnify its insured in the underlying lawsuit. Id.
 {¶ 35} The court, in holding that the claim for negligent misrepresentation constituted an "occurrence" for which coverage applied, based its reasoning on the fact that the parties agreed that "property damage occurred to the bridge when it was moved."State Farm Fire Cas. Co., 74 Ohio Misc.2d at 97. Thus, the court held that State Farm Fire and Casualty Company had a duty to defend or indemnify its insured as "[t]his property damage was arguably or potentially caused by the [purchasers'] reliance on [the seller's] statement about the bridge." Id.
 {¶ 36} However, unlike State Farm Fire Cas. Co., where the parties agreed that property damage occurred when the bridge was removed, there is no agreement here between the parties nor any allegation that property damage resulted from Builders' alleged underestimation of the renovation of the townhouses. Because Schilling has not alleged any property damage resulted from Builders' alleged negligent misrepresentation, State FarmFire and Cas. Co. is distinguishable and not persuasive. In light of the Supreme Court's holding in Cincinnati Ins. Co.,
Schilling's claim against Builders for negligent misrepresentation, seeking damages for economic loss, does not constitute an "occurrence" under the policy.
 {¶ 37} Moreover, even if Schilling's claim for negligent misrepresentation against Builders constituted an "occurrence" under the policy, Westfield does not owe a duty to defend or indemnify Builders because Schilling's claim is specifically excluded in the policy. The relevant portion of the policy provides as follows:
 {¶ 38} "Section I — Coverages
 {¶ 39} "Coverage A. Bodily Injury and Property Damages Liability
 {¶ 40} "* * *
 {¶ 41} "2. Exclusions.
 {¶ 42} "This insurance does not apply to:
 {¶ 43} "* * *
 {¶ 44} "m. Damage to Impaired Property or Property Not Physically Injured
 {¶ 45} "`Property damage' to `impaired property' or property that has not been physically injured, arising out of:
 {¶ 46} "(1) A defect, deficiency, inadequacy or dangerous condition in `your product' or `your work;' or
 {¶ 47} "(2) A delay or failure by you or anyone acting on your behalf to perform a contract of agreement in accordance with its terms.
 {¶ 48} "This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to `your product' or `your work' after it has been put to its intended use.
 {¶ 49} "* * *
 {¶ 50} "Section V — Definitions
 {¶ 51} "* * *
 {¶ 52} "17. `Your product' means:
 {¶ 53} "a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
 {¶ 54} "(1) You;
 {¶ 55} "(2) Others trading under your name; or
 {¶ 56} "(3) A person or organization whose business or assets you have acquired; and
 {¶ 57} "b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
 {¶ 58} "`Your product' includes:
 {¶ 59} "a. Warranties and representation made at any time with respect to the fitness, quality, durability, performance or use of `your product;' and
 {¶ 60} "b. The providing of or failure to provide warnings or instructions.
 {¶ 61} "`Your product' does not include vending machines or other property rented to or located for the use of others but not sold.
 {¶ 62} "* * *
 {¶ 63} "19. `Your work' means:
 {¶ 64} "a. Work or operations performed by you or on your behalf; and
 {¶ 65} "b. Materials, parts or equipment furnished in connection with such work or operations.
 {¶ 66} "`Your work' includes:
 {¶ 67} "a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of `your work;' and
 {¶ 68} "b. The providing of or failure to provide warnings or instructions."
 {¶ 69} Here, Schilling's claim for negligent misrepresentation against Builders is, at best, a claim for property damage that is impaired or not physically injured. The gravamen of Schilling's claim is that, as a result of Builders' negligent misrepresentation of the low estimate, the renovation of the townhouses cost more than expected and the completion of the renovation was delayed, and subsequently stopped. Such "delay" in the renovation or "failure" to finish the renovation per the agreement is specifically excluded under Section I, Coverage A, Part 2m of the policy. As a result, even if Schilling's negligent misrepresentation claim constitutes an "occurrence," Westfield has no duty to defend or indemnify Builders because Schilling's claim is specifically excluded under the policy. See, e.g., Acme Constr. Co., Inc. v. ContinentalNatl. Indemn. Co., Cuyahoga App. No. 81402, 2003-Ohio-434 (finding that despite an "occurrence," the insurer was under no duty to defend or indemnify because of a specific exclusion in the policy). Thus, the trial court erred in denying Westfield's motion for summary judgment and in finding that Westfield has a duty to indemnify Builders with respect to Schilling's claim for negligent misrepresentation.
 II {¶ 70} For its third assignment of error,[2] Westfield asserts that the trial court erred when it determined that Westfield was bound by the consent judgment entered into between Schilling and Builders without the knowledge or consent of Westfield. In essence, Westfield argues that Builders breached its contract with Westfield and "failed to cooperate in its own defense." We find Westfield's assertion well taken.
 {¶ 71} The relevant portions of the policy provide as follows:
 {¶ 72} "Section IV — Commercial General Liability Conditions
 {¶ 73} "* * *
 {¶ 74} "2. Duties In The Event of Occurrence, Offense, Claim Or Suit.
 {¶ 75} "* * *
 {¶ 76} "c. You and any other involved insured must:
 {¶ 77} "(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or `suit;'
 {¶ 78} "(2) Authorize us to obtain records or other information;
 {¶ 79} "(3) Cooperate with us in the investigation, settlement or defense of the claim or `suit;' and
 {¶ 80} "(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
 {¶ 81} "d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent. * * *"
 {¶ 82} The Supreme Court of Ohio held in Sanderson v. OhioEdison Co., 69 Ohio St.3d 582, 586, 1994-Ohio-379,635 N.E.2d 19, as follows:
 {¶ 83} "[W]here an insurer unjustifiably refuses to defend an action, leaving the insureds to fend for themselves, the insureds are at liberty to make a reasonable settlement without prejudice to their rights under the contract. By abandoning the insureds to their own devices in resolving the suit, the insurer voluntarily forgoes the right to control the litigation and, consequently, will not be heard to complain concerning the resolution of the action in the absence of a showing of fraud, even if liability is conceded by the insureds as a part of settlement negotiations."
 {¶ 84} However, where the insurer does not "unjustifiably refuse" to defend its insured, i.e., the policy clearly does not provide coverage for the claim, it cannot be said that the insured is abandoned and at liberty to make a "reasonable settlement" without breaching their rights under the policy. See, e.g., Washington v. Strowder's Funeral Chapel (Apr. 22, 1999), Cuyahoga App. No. 72895. Likewise, where the insurer defends its insured, either in whole or by a reservation of rights,Sanderson does not apply and the insured is not "at liberty to make a reasonable settlement without prejudice to their rights under the contract." See, e.g., Romstadt v. Allstate Ins. Co.
(C.A. 6, 1995), 59 F.3d 608, 613-614 ("[w]here the insurer did not refuse to defend its insured, we hold that the rule inSanderson does not apply").
 {¶ 85} Schilling relies upon Presrite Corp. v. CommercialUnion Ins. Co. (1996), 113 Ohio App.3d 38, 680 N.E.2d 216, where this court held that an insured does not breach its duty to cooperate when it enters into a settlement if the insurer denies coverage. The Presrite court, however, in noting thatSanderson holds otherwise, relied upon a decision by the Eighth Circuit Court of Appeals, McNicholes v. Subotnik (C.A. 8, 1993),12 F.3d 105, where the plaintiff notified the defendant's insurer that she would pursue settlement directly with the defendant, who was being defended under a reservation of rights. Most important (and most absent from the instant matter), the plaintiff inMcNicholes informed the defendant's insurer that the settlement would be in accordance with Miller v. Shugart, 316 N.W.2d 729,733-735 (Minn. 1982), which requires the following elements to enforce the settlement agreement against the insurer: (1) the agreement is reasonable and prudent, (2) the insured did not violate his duty to cooperate with the insurer, and (3) the agreement is not the product of fraud and collusion. While these requirements were found to have been met in McNicholes, thePresrite court did not apply a similar analysis to the settlement reached and none of the parties ever informed the insurer that a settlement was being pursued. Moreover, unlike the instant matter, coverage was found in McNicholes and Presrite
and the insurer in both cases was required to indemnify its insured. Because neither Builders nor Schilling informed Westfield that a settlement was being pursued, reliance uponPresrite (which in turn is based on McNicholes) is misplaced.
 {¶ 86} Here, Westfield, upon receiving notice of the claim against Builders in the underlying action, tendered a defense to Builders under a reservation of rights. Throughout the entirety of the underlying action, Westfield provided Builders a defense. Despite Westfield's filing of the declaratory judgment action where it sought a determination that the claim against Builders was not covered under the policy, Westfield continued to defend Builders. Because Westfield did not refuse to defend Builders at any point in the underlying action, Builders was not at liberty, and in fact barred from, entering into a settlement with Schilling without Westfield's knowledge or consent. Indeed, Builders breached the contract with Westfield by failing to "cooperate" in the "settlement" of the underlying action. As a result, the trial court erred in finding that the consent judgment was binding upon Westfield.
 {¶ 87} Judgment reversed and final judgment entered for appellant.
Anne L. Kilbane and Timothy E. McMonagle, JJ., concur.
This cause is reversed and final judgment entered for appellant.
It is, therefore, ordered that said appellant recover of said appellees its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] It appears from Westfield's appellate brief that there was a claim for property damage which arose during the renovation which was recognized and paid by Westfield prior to the filing of the underlying action. According to Westfield, the property damage claim arose when one of the plumbing subcontractors left the windows open in a suite sold to Mr. and Mrs. Gotschall, which resulted in frozen pipes and water damage on December 24, 1998. The Gotschall's property damage claim was paid by their own insurer, Allstate Insurance Company, which then asserted a subrogation claim against Westfield. On December 17, 1999, Allstate Insurance Company and Westfield entered into a settlement and release, which resolved in toto the property damage claim. This property damage claim is not part of the allegations in the underlying action, as it was settled and resolved prior to the filing of the underlying action.
[2] Westfield asserts, in its second assignment or error, that the trial court erred to its prejudice when it prevented it from conducting discovery concerning the circumstances of the consent judgment. In support of its assertion, Westfield argues that the trial court prevented it from taking the depositions of the parties to determine the precise agreement entered into by not ruling on the protective order filed by Schilling. Because the trial court never ruled on the motion for protective order, there is no final appealable order before us and we lack jurisdiction to entertain Westfield's second assignment of error.